939 A.2d 767

SENSIENT COLORS INC., PLAINTIFF–RESPONDENT, v. ALLSTATE INSURANCE COMPANY, F/K/A NORTHBROOK INSURANCE COMPANY, AMERICAN MOTORISTS INSURANCE COMPANY, FEDERAL INSURANCE COMPANY, FIDELITY & CASUALTY COMPANY OF NEW YORK, FIREMAN'S FUND INSURANCE COMPANY, HARTFORD ACCIDENT & INDEMNITY COMPANY, HIGHLANDS INSURANCE COMPANY, INTERGRITY INSURANCE COMPANY, INTERSTATE FIRE & CASUALTY COMPANY, LLOYDS OF LONDON AND BRITISH COMPANIES, NEW JERSEY PROPERTY LIABILITY INSURANCE GUARANTY ASSOCIATION, OLD REPUBLIC INSURANCE COMPANY, PINE TOP INSURANCE COMPANY, ROYAL INSURANCE COMPANY, TWIN CITY FIRE INSURANCE COMPANY, WESTPORT INSURANCE CORPORATION, F/K/A PURITAN INSURANCE COMPANY AND XYZ INSURANCE COMPANIES, DEFENDANTS, AND EXECUTIVE RISK INDEMNITY INC., F/K/A AMERICAN EXCESS INSURANCE CO., LIBERTY MUTUAL INSURANCE COMPANY AND ZURICH AMERICAN INSURANCE COMPANY, DEFENDANTS–APPELLANTS.

Argued October 9, 2007—Decided January 29, 2008.

374

376

*Robert W. Muilenburg* and *Brian J. Whiteman* argued the cause for appellants (*Wilson, Elser, Moskowitz, Edelman & Dicker,* attorneys for Liberty Mutual Insurance Company and Coughlin Duffy, attorneys for Zurich American Insurance Company, Successor–in–Interest to Zurich Insurance Company (U.S.Branch); *Mr. Muilenburg, Mr. Whiteman, Thomas F. Quinn* and *Karen H. Moriarty,* of counsel and on the briefs).

*Donald W. Kiel* argued the cause for respondent Sensient Colors Inc. (*Kirkpatrick & Lockhart Nicholson Graham,* attorneys; *Mr. Kiel, David S. Kwon, Robert F. Pawlowski* and *Elizabeth M. Harris,* on the brief).

*Steven D. Cantarutti* submitted a letter in lieu of brief on behalf of appellant Executive Risk Indemnity Inc., f/k/a American Excess Insurance Co. (*Smith Stratton,* attorneys).

Justice ALBIN delivered the opinion of the Court.

The proper functioning of our federal system requires that courts of sister states, when appropriate, extend comity to one another. In this appeal, with similar lawsuits in two different state court systems, we must determine the legal principles that

govern when a New Jersey court should defer to another jurisdiction's courts.

This case involves similar environmental insurance coverage actions pending in two different jurisdictions, the first one filed by an insurance company in New York and a later one filed by its insured in New Jersey. The aim of both declaratory judgment actions is to determine whether the insurer is required to defend and indemnify its insured in matters relating to the contamination of property in Camden, New Jersey.

The insurer moved to dismiss the parallel New Jersey case in Superior Court on the ground that deference should be given to the first-filed action. The insured responded that the first-filed doctrine should not apply because the issues and parties in both actions are not identical, because the insurer acted in bad faith by forum shopping, and because New Jersey has the dominant interest—ensuring that funds are available for the clean-up of toxic-laden property. The New Jersey trial court dismissed the action, relying on the first-filed rule. The Appellate Division reversed, finding that the declaratory action in this state is not substantially similar to the one in New York and that "special equities" favor resolution of the coverage issue in this state's courts.

Despite our strong adherence to principles of comity, the special equities in this case heavily favor our state courts exercising jurisdiction. Because of New Jersey's dominant interests, this state is the natural forum for resolving insurance coverage issues concerning hazardous-waste-infested property located within its borders. We therefore affirm the judgment of the Appellate Division.

I.

A.

Plaintiff Sensient Colors Inc. (Sensient) is a New York corporation with headquarters in Missouri. From 1922 to 1988, Sensient, then known as H. Kohnstamm & Co., Inc. (Kohnstamm), operated

a factory at 31st Street and Lemuel Street in Camden that manufactured colorants, organic pigments, and dispersions for food, drugs, and cosmetics.[1] In 1998, the then-abandoned factory site was located directly adjacent to a low-income housing development known as Pleasant Gardens, which was home to 1,000 of Camden's residents. Some of the neighborhood residents lived within 100 feet of the abandoned property.

In January 1998, the New Jersey Department of Environmental Protection (NJDEP) removed from the factory site forty-two drums of hazardous chemicals and drained a tank leaking sodium hydroxide. At the request of the NJDEP, in March 1998 the U.S. Environmental Protection Agency (EPA) intervened, finding on the site thousands of containers of hazardous substances, including flammable liquids, corrosive chemicals, and poisons. At the time, children played on the contaminated grounds of the abandoned and unsecured property, which also had become a haven for suspected drug users and vandals.

During the next several years, with the cooperation of state and local agencies, the EPA removed thousands of drums, bags, and containers of hazardous substances from the factory buildings and excavated over 71,000 tons of lead-contaminated soil and 8,000 tons of debris.[2] An EPA study revealed that the hazardous waste on the factory site leached into the soil and spread to the Pleasant Gardens apartment complex, contaminating the grounds with lead.

---

[1] Sensient's parent corporation is Sensient Technologies Corporation, which was previously known as Universal Foods Corporation. In 1988, Universal Foods purchased Kohnstamm. That same year, Kohnstamm transferred ownership of the factory to its wholly-owned subsidiary, General Color Company, a New Jersey corporation, and then severed ties to General Color. General Color continued operating the factory until 1997. In 1990, Kohnstamm changed its name to the Warner–Jenkinson Company, Inc. and operated under that name for twelve years until it became known as Sensient in 2002.

[2] By 2004, the City of Camden apparently had initiated proceedings to condemn the property with the intent of transferring title to Westfield Acres Urban Renewal Associates II, LP, which planned to construct a low-income residential development on the site.

Moreover, the flow of waste underneath the apartment buildings caused them to subside and crack.

In November 2003, Pleasant Gardens Realty Corporation filed a civil action in the Superior Court, Law Division seeking damages against Sensient and other named defendants for the contamination of its property. The NJDEP was later joined as a defendant and cross-claimed against Sensient, seeking recovery for costs it expended in cleaning up the Camden site. In June 2004, the EPA demanded that Sensient reimburse it in the amount of $10,867,466 plus interest for its remediation of the toxic-waste-ridden property. In its demand, the EPA also noted that additional work might be necessary to address residual contamination.[3]

Sensient's predecessor, Kohnstamm, through its New York office, had purchased from various insurers commercial liability insurance policies covering properties it owned, including the Camden factory and other New Jersey sites. Zurich Insurance Company, predecessor to Zurich American Insurance Company (Zurich), a New York corporation, issued primary coverage insurance through a New York broker to Kohnstamm for a number of years in the 1970s and 1980s. During those years, other insurers issued excess and umbrella policies to Kohnstamm, and for one of those years, Liberty Mutual Insurance Company (Liberty) issued a primary policy.

Between May and July 2004, Sensient notified its insurers of the Pleasant Gardens damages suit and the EPA reimbursement demand. Shortly thereafter, Zurich advised Sensient that, under a reservation of rights, it would participate in the defense of the Pleasant Gardens lawsuit and the EPA recovery demand. Liberty, however, refused to provide a defense or coverage for the two claims. Some excess and umbrella carriers denied coverage;

---

[3] Because Sensient did not meet the EPA's demand, the federal government initiated a lawsuit in the United States District Court for the District of New Jersey to recover its remediation costs, now exceeding $16 million.

others either did not respond to the coverage request or would not respond until Sensient had exhausted its underlying coverage.

Without in any way signaling to Sensient that it had changed its mind and decided to deny coverage, in March 2005, Zurich filed a declaratory judgment action in a New York trial court, naming Sensient as a defendant. Zurich sought a determination from the court that it had no obligation to defend or indemnify Sensient on the Pleasant Gardens and EPA claims.[4]

Less than two months later, Sensient filed its own declaratory judgment action in the Superior Court, Law Division, Camden County, seeking an order that would compel Zurich and other named insurers to defend and indemnify Sensient in the Pleasant Gardens and EPA matters. In its complaint, Sensient also named as a defendant the New Jersey Property–Liability Insurance Guaranty Association (NJPLIGA), which had stepped into the shoes of two insurers that had since become insolvent.[5] In addition to declaratory relief, Sensient sought compensatory damages from those insurers who expressly denied coverage, and punitive damages from Zurich for breaching the duty of good faith and fair dealing owed to its insured.

## B.

In response to motions filed by Zurich and other insurers in this state's Law Division, the trial court dismissed Sensient's New Jersey suit in favor of the first-filed complaint in New York. The court characterized the case as a contract dispute over insurance coverage involving an insured incorporated in New York, a policy

---

[4] Alternatively, Zurich demanded contribution from Sensient's other insurers. Despite disclaiming coverage, Zurich continues to defend Sensient against both the Pleasant Gardens and EPA claims.

[5] NJPLIGA is a nonprofit, unincorporated statutory entity that takes the place of insolvent insurers, covering certain claims under certain insurance policies. *See* New Jersey Property–Liability Insurance Guaranty Association Act, *N.J.S.A.* 17:30A–1 to –20.

issued in New York, and an action filed first in New York. The court emphasized that the EPA had completed remediation of the contaminated property, leaving one essential issue to be resolved—whether the insurers are responsible for covering the EPA's cleanup-reimbursement demand. Because Zurich filed first, the court reasoned that Sensient had the burden of establishing "that New Jersey has a greater interest in this litigation." Viewing the case to be only about a reimbursement claim, the court concluded that no New Jersey public policy trumped that of New York and therefore the first-filed action had precedence over the New Jersey action.

## C.

The Appellate Division reversed and reinstated Sensient's complaint, finding that the trial court misapplied the first-filed doctrine when measured against the standards set forth in *American Home Products Corp. v. Adriatic Insurance Co.*, 286 *N.J.Super.* 24, 668 *A.*2d 67 (App.Div.1995). *Sensient Colors Inc. v. Allstate Ins. Co.*, 388 *N.J.Super.* 374, 383–84, 908 *A.*2d 826 (App.Div.2006).

With *American Home Products* as a backdrop, the panel held that the insurers failed to establish a substantial similarity between the New York and New Jersey actions. *Ibid.* According to the panel, there was no showing that the New York court can assert jurisdiction over NJPLIGA or that New York recognizes a cause of action against an insurer for breaching a duty of good faith and fair dealing in processing an insured's claim. *Ibid.* For those reasons alone, the panel maintained, a comity stay or dismissal should have been denied. *See id.* at 384, 908 *A.*2d 826.

However, the panel also determined that the trial court erred in dismissing Sensient's claim because of the presence of "special equities." *Ibid.* In this case, "New Jersey's contacts with this action are 'qualitatively and economically predominant' in comparison to those of New York," specifically because "the contaminated site is located exclusively in New Jersey and has yet to be completely remediated." *Id.* at 388, 908 *A.*2d 826 (quoting *Am. Home Prods., supra,* 286 *N.J.Super.* at 41, 668 *A.*2d 67). Also

pointing to New Jersey as the appropriate forum, the panel noted, is that when "the insured risk, the environmental damage, and the policyholder are located in the same state ... the law of the site of the risk applies." *Ibid.* (citing *Pfizer, Inc. v. Employers Ins. of Wausau,* 154 *N.J.* 187, 195, 712 *A.*2d 634 (1998)).

Critical to the panel's decision was its recognition of "an actual conflict between the laws of New Jersey and New York in interpreting Zurich's standard pollution-exclusion clause." *Id.* at 390, 908 *A.*2d 826. New Jersey will not enforce such a clause, which excludes coverage for injuries or damage from the unexpected or unintended discharge of hazardous substances into the environment. *Ibid.* (citing *Morton Int'l, Inc. v. Gen. Accident Ins. Co. of Am.,* 134 *N.J.* 1, 30–31, 629 *A.*2d 831 (1993), *cert. denied,* 512 *U.S.* 1245, 114 *S.Ct.* 2764, 129 *L.Ed.*2d 878 (1994)). On the other hand, the panel indicated that, as a matter of law, New York required insurance policies issued to commercial and industrial businesses to "include the standard form pollution-exclusion clause" for the purpose of deterring any entity from polluting the environment. *Ibid.* Thus, the panel viewed the divergent public policies of the two states to be of "real consequence" even if selection of the appropriate jurisdiction does not necessarily dictate the applicable choice of law. *Ibid.*

Another reason supporting its decision, the panel stated, is that relevant documents and witnesses are located in this state and that the litigation in New Jersey had advanced further than the litigation in New York. *Id.* at 391, 908 *A.*2d 826. The panel therefore held that Zurich had not satisfied the predicates necessary for the Superior Court to defer to the first-filed action and, in any event, that Sensient had shown special equities for New Jersey retaining jurisdiction. *Ibid.*

We granted the petitions for certification filed by Zurich, Liberty, and one other insurer, Executive Risk Indemnity Inc. 189 *N.J.* 649, 917 *A.*2d 788 (2007).[6]

---

[6] None of Sensient's other insurers filed a petition for certification. Allstate Insurance Company submitted a letter joining in the arguments advanced in Zurich and Liberty's joint petition.

## II.

Zurich and Liberty maintain that the Appellate Division failed to adhere to the general rule of comity that a first-filed action in another jurisdiction takes precedence over a later-filed action in the absence of special equities.[7] Those insurers contend that the predicate for a comity stay or dismissal is not that the parties, claims, and issues in the two lawsuits be "nearly identical," as required by the appellate panel, but only that they be "substantially the same," as set forth in *American Home Products*. Because NJPLIGA represents only two of eighteen insurers that wrote just three of approximately thirty-five policies at issue, Zurich and Liberty argue that even without NJPLIGA in the first-filed action, the New York and New Jersey cases have substantially similar parties. They also argue that the two actions involve identical legal claims—a declaration of the obligations owed by the named insurers to Sensient in the EPA demand and the Pleasant Gardens litigation. Moreover, Zurich insists that Sensient cannot make out a credible claim that Zurich engaged in bad faith conduct, but even if it could, New York permits such claims when the insurer acts "in gross disregard" of its insured's interests, *New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 295 *F*.3d 232, 241 (2d Cir.2002).

Zurich and Liberty, moreover, contend that Sensient has not established special equities warranting a comity stay or dismissal. According to the insurers, the Appellate Division elevated the location of the site—the only pertinent New Jersey contact—over every other factor favoring deference. The insurers emphasize that both Zurich and Sensient are New York corporations, that Sensient is headquartered in Missouri and has no current presence in New Jersey, and that Sensient has not shown that a significant number of witnesses or documents are located in New Jersey. Last, the insurers submit that having the case proceed in

---

[7] Executive Risk is relying on the arguments advanced by Zurich and Liberty.

New York does not necessarily mean that New Jersey's law will not be applied.

In response, Sensient contends that "[t]he Appellate Division properly applied settled principles of comity and appropriately considered New Jersey's paramount interest in the remediation of New Jersey hazardous waste sites in deciding" to reinstate the insurance coverage action in this state.

In addressing the jurisdictional battle between Sensient and its insurers, we begin by reviewing the first-filed doctrine and the policy reasons underpinning it.

### III.

### A.

New Jersey has long adhered to "the general rule that the court which first acquires jurisdiction has precedence in the absence of special equities." *Yancoskie v. Del. River Port Auth.,* 78 *N.J.* 321, 324, 395 *A.*2d 192 (1978); *see also O'Loughlin v. O'Loughlin,* 6 *N.J.* 170, 179, 78 *A.*2d 64 (1951). The first-filed rule, which has deep roots in our federal system, has been recognized by many courts of other jurisdictions. *See Riggs v. Johnson County,* 73 *U.S.* (6 *Wall.*) 166, 196, 18 *L.Ed.* 768, 776 (1868) ("[T]he court that first obtains possession of the controversy, or of the property in dispute, must be allowed to dispose of it without interference or interruption from the co-ordinate court."); *see also First Midwest Corp. v. Corporate Fin. Assocs.,* 663 *N.W.*2d 888, 890–91 (Iowa 2003); *Medtronic, Inc. v. Advanced Bionics Corp.,* 630 *N.W.*2d 438, 448–49 (Minn.Ct.App.2001). Under the first-filed rule, a New Jersey state court ordinarily will stay or dismiss a civil action in deference to an already pending, substantially similar lawsuit in another state, unless compelling reasons dictate that it retain jurisdiction. *O'Loughlin, supra,* 6 *N.J.* at 179, 78 *A.*2d 64.

The question is not whether a state court has the power to exercise jurisdiction over a case filed within its jurisdiction, but

whether the court should restrain itself and not exercise that power. *Ibid.; see also Gosschalk v. Gosschalk,* 48 *N.J.Super.* 566, 579, 138 *A.*2d 774 (App.Div.) (stating that trial court has "no compulsory duty ... to stay a proceeding pending before it" because same cause of action has been instituted in another jurisdiction), *aff'd o.b.,* 28 *N.J.* 73, 145 *A.*2d 327 (1958). If we are to have harmonious relations with our sister states, absent extenuating circumstances sufficient to qualify as special equities, comity and common sense counsel that a New Jersey court should not interfere with a similar, earlier-filed case in another jurisdiction that is "capable of affording adequate relief and doing complete justice." *O'Loughlin, supra,* 6 *N.J.* at 179, 78 *A.*2d 64; *see also Thompson v. City of Atlantic City,* 190 *N.J.* 359, 382, 921 *A.*2d 427 (2007). The litigation of substantially similar lawsuits in multiple jurisdictions with opposing parties racing to acquire the first judgment is not only wasteful of judicial resources, but anathema in a federal system that contemplates cooperation among the states.[8] Thus, any comity analysis should begin with a presumption in favor of the earlier-filed action.

As already suggested, however, the first-filed rule is not an inflexible doctrine. In New Jersey, the presence of special equities may lead a court to disregard the traditional deference paid to the first-filed action in another state and to exercise jurisdiction over a case filed in this state. Special equities are reasons of a compelling nature that favor the retention of jurisdiction by the court in the later-filed action. Special equities have been found when one party has engaged in jurisdiction shopping to deny the other party the benefit of its natural forum. *See Margarum v. Moon,* 63 *N.J. Eq.* 586, 589, 592, 53 *A.* 179 (Ch.1902) (declining to defer to creditor's first-filed action in another state

---

[8] It bears mentioning that each state must give full faith and credit to the judgments of every other state. *See U.S. Const.* art. IV, § 1. "The rule of primacy to the first final judgment is a necessary incident to the requirement of full faith and credit." *Hanson v. Denckla,* 357 *U.S.* 235, 256, 78 *S.Ct.* 1228, 1241, 2 *L.Ed.*2d 1283, 1299 (1958).

that was instituted to evade New Jersey's laws protecting debtors from attachment of property). Courts elsewhere have also declined to defer to a first-filed action when a party acting in bad faith has filed first "in anticipation of the opposing party's imminent suit in another, less favorable, forum." *EEOC v. Univ. of Pa.*, 850 *F.*2d 969, 976 (3d Cir.1988), *aff'd on other grounds*, 493 *U.S.* 182, 110 *S.Ct.* 577, 107 *L.Ed.*2d 571 (1990); *see also Medtronic, supra*, 630 *N.W.*2d at 449–50 (declining to enforce first-filed rule when one party filed declaratory judgment action in another jurisdiction to preempt imminent action for damages or injunctive relief by "natural plaintiff").

For example, in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 *U.S.* 1, 103 *S.Ct.* 927, 74 *L.Ed.*2d 765 (1983), the United State Supreme Court did not defer to a swiftly initiated first-filed action, which denied a party a reasonable chance of bringing a suit in its favored forum to enforce an arbitration agreement. In that case, a hospital and a contractor entered into a contract that permitted arbitration to resolve any dispute. *Id.* at 4–5, 103 *S.Ct.* at 931, 74 *L.Ed.*2d at 773. Under the United States Arbitration Act, 9 *U.S.C.A.* § 4, the contractor could not seek to compel arbitration until the hospital declined to arbitrate. *Moses Cone, supra*, 460 *U.S.* at 21, 103 *S.Ct.* at 939, 74 *L.Ed.*2d at 783. When a dispute arose, the hospital, less than a day after refusing to arbitrate, raced to file a declaratory judgment action in a North Carolina state court. *Id.* at 6–7, 21, 103 *S.Ct.* at 932, 939, 74 *L.Ed.*2d at 774, 783. Shortly afterwards, the contractor filed an action in federal court to enforce the arbitration agreement. *Id.* at 21, 103 *S.Ct.* at 939, 74 *L.Ed.*2d at 783. The Supreme Court held that the first-filed rule did not apply, in part, because the hospital deprived the contractor of a "reasonable opportunity" to file suit in the jurisdiction of its choice. *See ibid.*

■ In addition, courts have found special equities when significant state interests, such as the remediation of polluted sites, are implicated, *see Am. Home Prods., supra*, 286 *N.J.Super.* at 40–41, 668 *A.*2d 67, and when deferring to a proceeding in another

jurisdiction "would contravene the public or judicial policy" of the forum state, *City of Philadelphia v. Austin*, 86 *N.J.* 55, 64, 429 *A.*2d 568 (1981). "[A]pplication of comity involves an examination by the Court of both the public policy of the forum state and the impact on that policy of enforcing the foreign proceeding." *Ibid.; see also Bigelow v. Old Dominion Copper Mining & Smelting Co.*, 74 *N.J. Eq.* 457, 478–81, 71 *A.* 153 (Ch.1908) (recognizing exception to first-filed rule when "a party oppresses his adversary by suing him in a foreign jurisdiction for the purpose of evading some established policy of the jurisdiction where the parties are domiciled").

Finally, courts have found special equities when it would cause "great hardship and inconvenience" to one party by proceeding in the first-filed action and no unfairness to the opposing party by proceeding in the second-filed action. *See O'Loughlin, supra,* 6 *N.J.* at 180–81, 78 *A.*2d 64; *see also Am. Home Prods., supra,* 286 *N.J.Super.* at 39, 668 *A.*2d 67 (noting that *forum non conveniens* factors, such as location of parties, witnesses, and evidence, and related factors of fairness, convenience, and judicial efficiency, may be relevant to presence of special equities); *Gosschalk, supra,* 48 *N.J.Super.* at 580, 138 *A.*2d 774 (declining to defer to first-filed action in foreign country because of extensive delays in those proceedings). *But see Cogen Techs. NJ Venture v. Boyce Eng'g Int'l Inc.,* 241 *N.J.Super.* 268, 273–74, 574 *A.*2d 1018 (App. Div.) (declining to find special equities because litigation over contract dispute in first-filed jurisdiction had reached advanced stage, thus not warranting this state asserting jurisdiction), *certif. denied,* 122 *N.J.* 358, 585 *A.*2d 368 (1990).

In short, a stay or dismissal of the second-filed action should be denied if an "injustice would be perpetrated" on a party in the first-filed action and "no hardship, prejudice or inconvenience" would be inflicted on the other by proceeding in the second-filed case. *Gosschalk, supra,* 48 *N.J.Super.* at 579, 138 *A.*2d 774. Whether special equities exempt a court from deferring to a first-filed action depends on a fact-specific inquiry that weighs consid-

erations of fairness and comity. The determination of whether to grant a comity stay or dismissal is generally within the discretion of the trial court. *Gosschalk, supra,* 48 *N.J.Super.* at 579, 138 *A.*2d 774; *accord First Midwest, supra,* 663 *N.W.*2d at 890.

## B.

The principles governing whether a comity stay or dismissal of a second-filed action should be granted were distilled by the Appellate Division in *American Home Products, supra,* which established for the first time an analytical framework allocating the burdens of persuasion to be borne by parties arguing for or against the stay or dismissal. *See* 286 *N.J.Super.* at 37, 668 *A.*2d 67. Like this case, *American Home Products* involved a suit between an insured and its insurers seeking coverage for the cleanup of environmentally contaminated sites. In that case, American Home Products filed suit in New Jersey Superior Court seeking declaratory relief against eighty insurers. *Id.* at 32, 668 *A.*2d 67. That case concerned virtually the same issues and parties raised by an insurance company in an earlier-filed action in New York. *Ibid.* The *American Home Products* court, however, concluded that New Jersey's dominant interest in the remediation of polluted property in this state coupled with traditional *forum non conveniens* factors constituted "special equities," justifying the denial of a comity stay. *Id.* at 39–42, 668 *A.*2d 67.

In reaching that decision, the Appellate Division applied a three-factor test that it developed from "existing precedent and common sense." *Id.* at 37, 668 *A.*2d 67. The *American Home Products* court held that to obtain a stay or dismissal of a second-filed action in this state for reasons of comity, a party must establish "(1) that there is a first-filed action in another state, (2) that both cases involve substantially the same parties, the same claims, and the same legal issues, and (3) that plaintiff [in the second-filed action] will have the opportunity for adequate relief in the prior jurisdiction." *Ibid.* (footnote omitted). If the party seeking a comity stay or dismissal satisfies those prerequisites,

then the burden shifts to the other party, which must demonstrate special equities for allowing the second-filed action to proceed. *Ibid.*

This is our first occasion to review the *American Home Products* paradigm, which has been followed by a number of appellate panels, including the panel in this case. *See Sensient Colors, supra*, 388 *N.J.Super.* at 383–91, 908 *A.2d* 826; *see also W.H. Indus., Inc. v. Fundicao Balancins, Ltda*, 397 *N.J.Super.* 455, 461–62, 937 *A.2d* 1022 (App.Div.2008); *Innes v. Carrascosa*, 391 *N.J.Super.* 453, 492–94, 918 *A.2d* 686 (App.Div.), *certif. denied*, 192 *N.J.* 73, 926 *A.2d* 857 (2007); *Exxon Research & Eng'g Co. v. Indus. Risk Insurers*, 341 *N.J.Super.* 489, 506–19, 775 *A.2d* 601 (App.Div.2001); *Bass v. DeVink*, 336 *N.J.Super.* 450, 456–58, 765 *A.2d* 247 (App.Div.), *certif. denied*, 168 *N.J.* 292, 773 *A.2d* 1156 (2001). The *American Home Products* test, we find, generally captures the controlling factors that a court should consider in determining whether to defer to a first-filed action or exercise jurisdiction over a later-filed action. With the exception of the adequate relief factor (factor three), which truly belongs in the category of a special equity, we also conclude that the burdens of persuasion are placed on the proper parties.

 We agree that the party moving for a comity stay or dismissal has the burden of establishing the presence of *American Home Products* factors one and two—that an earlier-filed action in another state "involve[s] substantially the same parties, the same claims, and the same legal issues." *Am. Home Prods., supra*, 286 *N.J.Super.* at 37, 668 *A.2d* 67. Clearly, the initial burden should be on the party challenging the appropriateness of the court exercising jurisdiction. Without such a preliminary showing, a court would have no reason to consider deferring on comity grounds. We also note that the moving party is required only to show that the parties, claims, and issues in the two lawsuits are *substantially* the same, not *exactly* the same. Mandating a complete identity of parties, claims, and issues would unfairly limit the exercise of comity on the basis of minor or technical differ-

ences between the two suits and give a party an undesirable incentive to change the format, and not the substance, of a pleading for the purpose of defeating comity.

Thus, if the two cases involve substantially the same parties, claims, and issues, the burden shifts to the party arguing that jurisdiction should be retained in the second-filed action. That party must then show that it will not have the opportunity for adequate relief in the first-filed jurisdiction. The inability of the first-filed jurisdiction to provide adequate relief is akin to a special equity.[9] All special equities are grounded in principles of fairness, and are implicated when a first-filed action may not do full justice to a party. *See O'Loughlin, supra,* 6 *N.J.* at 179–80, 78 *A.*2d 64; *Am. Home Prods., supra,* 286 *N.J.Super.* at 38–39, 668 *A.*2d 67. As indicated earlier, special equities must be demonstrated by the party urging that a court retain jurisdiction over a later-filed action.

The defendant seeking a comity stay or dismissal in the second-filed action should not have to argue that the other party will receive a fair day in the courts of another jurisdiction. The plaintiff in the second-filed action contending that it cannot receive a fair hearing on the merits of its claims in the courts of the first-filed jurisdiction is in the best position to advance that argument. That approach comports with the presumption in favor of the first-filed action and our recognition that "[w]e do not distrust the proceedings of the courts of our sister states...." *Cogen Techs., supra,* 241 *N.J.Super.* at 272, 574 *A.*2d 1018.

---

[9] Two Appellate Division cases highlight this point. In *Innes, supra,* because the defendant in the second-filed New Jersey action did not show that a foreign court would apply the best interests of the child standard in a child custody case, the court concluded that the plaintiff did not have the opportunity for adequate relief in the foreign proceeding. 391 *N.J.Super.* at 494, 918 *A.*2d 686. The court therefore declined to defer to a first-filed action in the foreign court. *Ibid.* In a jurisdictional dispute in *Van Haren v. Van Haren,* 171 *N.J.Super.* 12, 407 *A.*2d 1242 (App.Div.1979), the court recognized that this jurisdiction's application of the best interests of the child standard in a child custody case is a special equity. *Id.* at 22, 407 *A.*2d 1242.

■ In summary, a party moving for a comity stay or dismissal must show that there is a first-filed action in another jurisdiction involving substantially the same parties, claims, and legal issues as the action in this state. Once that is established, the party opposing a stay or dismissal must demonstrate the presence of one or more special equities that overcome the presumption favoring the first-filed action.

## IV.

■ We now apply those principles to the facts of this case. Although we have considerable doubts about the Appellate Division's conclusion that the New Jersey and New York declaratory judgment actions do not involve substantially similar parties and claims, we need not address that point because we are persuaded that special equities strongly support New Jersey exercising jurisdiction over this case. Despite the questions raised about whether bad faith is a viable claim and NJPLIGA an essential party in the New York action, we begin our analysis assuming that there is a substantial similarity of parties and claims between the two lawsuits and that the insurers therefore have met their initial burden favoring the first-filed action. We next turn to the special equities that support the New Jersey trial court's exercise of jurisdiction over the second-filed action.

■ Zurich issued commercial liability insurance policies to Sensient's predecessor, Kohnstamm, providing coverage for its Camden factory site. After Sensient notified Zurich of the Pleasant Gardens suit and the EPA reimbursement demand, the insurer informed Sensient that it would participate in the defense of those matters under a reservation of rights. Without a denial of coverage by Zurich, Sensient had little reason to file an action in New Jersey for a declaration of its rights. In a preemptive move similar to the one condemned in *Moses Cone*, Zurich without warning filed suit in New York, thereby denying Sensient the opportunity to select its own forum for resolving the coverage dispute. An insurer has a duty to act in good faith with its

insured. *See Pickett v. Lloyd's*, 131 *N.J.* 457, 467, 621 *A.*2d 445 (1993). Here, Zurich engaged in a first-strike maneuver, filing suit in New York while a lulled Sensient sat on its rights.[10]

The most important special equity for not deferring to the first-filed rule is New Jersey's strong public policy interest in the remediation of environmental contamination within its borders. That interest includes ensuring that an insurance policyholder is not wrongly denied funds for the clean-up of a hazardous-waste-ridden site. This case touches not just on property, but on the health and safety of New Jersey's residents, a number of whom were exposed unsuspectingly to toxic substances, such as lead. We have made it clear that "the governmental interests of a New Jersey forum ... are protection of the regulatory process in New Jersey, protection of New Jersey policyholders, protection of the victims of pollution, and protection of the New Jersey environment." *Pfizer, supra*, 154 *N.J.* at 207, 712 *A.*2d 634. Those interests are present in this case.

Zurich and Liberty's assertion that this case is merely a contractual dispute about the payment of damages, and not about remediation, is hotly contested. The EPA, NJDEP, and Pleasant Gardens have declared that further toxic waste clean-up emanating from the former Kohnstamm factory site may be required and further remediation costs incurred. We can neither ignore the possibility of future remediation expenses nor assume that an insured, such as Sensient, will be able to cover such costs without insurance proceeds to which it may be entitled. This state retains an interest in ensuring that the clean-up of any contaminated New Jersey site is fully funded. *See Unisys Corp. v. Ins. Co. of N. Am.*, 154 *N.J.* 217, 221–22, 712 *A.*2d 649 (1998).

---

[10] We acknowledge that Zurich claims that Sensient was dilatory in providing a list of its other insurers, but that fault, even if true, does not appear sufficient to warrant the filing of an unwarned and unanticipated lawsuit denying coverage.

Zurich and Liberty contend that this state no longer has an interest in the outcome of the coverage issue once the remediation is completed. We disagree. New Jersey has a strong interest in spurring the rapid clean-up of environmental contamination. If insurance coverage will disappear once remediation is completed, the government or a polluter would be given a perverse incentive to delay remediation efforts until the conclusion of the court case determining coverage. *See ibid.*

We have recognized that "[i]f the principal location of the insured risk is in a single state for a major portion of the insurance period, that location is the most important contact to be considered in the choice of the applicable law." *Gilbert Spruance Co. v. Pa. Mfrs.' Ass'n Ins. Co.,* 134 *N.J.* 96, 104, 629 *A.*2d 885 (1993) (quotation omitted). Although the choice of forum does not necessarily dictate the choice of law, clearly a forum state is more likely to give effect to its own laws when those laws embody a strong public policy intended to protect the safety and welfare of its people. *See Haumschild v. Cont'l Cas. Co.,* 7 *Wis.*2d 130, 95 *N.W.*2d 814, 816 (1959); *Restatement (Second) of Conflict of Laws* § 6(2)(b) (1971).

Cast in that light, New Jersey's interest becomes more compelling because of the divergent public policy approaches taken by New York and this state. At the heart of this case is the pollution-exclusion clause in the insurance policies issued to Sensient's predecessor. As a matter of public policy, New Jersey will not enforce the standard pollution-exclusion clause unless "the insured intentionally discharged, dispersed, released, or caused the escape of a known pollutant." *Morton, supra,* 134 *N.J.* at 31, 629 *A.*2d 831 (emphasis omitted). In contrast, New York had enacted a law, now repealed, that required insurance carriers to include that clause to deter companies from dumping toxic waste into the environment. *See Belt Painting Corp. v. TIG Ins. Co.,* 100 *N.Y.*2d 377, 763 *N.Y.S.*2d 790, 795 *N.E.*2d 15, 18 (2003). Although New York no longer legally compels inclusion of the pollution-exclusion clause in comprehensive liability insurance con-

tracts, *see ibid.*, we have no reason to believe that it would refuse to enforce such a provision on public policy grounds.

Thus, enforcement of the pollution-exclusion clause will likely depend on which state's substantive law applies. Although in this case we cannot say for certain whether New York would apply its own laws,[11] we are certain that a New Jersey court will apply the laws of this state. *See Pfizer, supra,* 154 *N.J.* at 205, 712 *A.*2d 634; *HM Holdings v. Aetna Cas. & Sur. Co.,* 154 *N.J.* 208, 215, 712 *A.*2d 645 (1998); *Unisys, supra,* 154 *N.J.* at 223, 712 *A.*2d 649; *Gilbert Spruance, supra,* 134 *N.J.* at 97–98, 629 *A.*2d 885. New Jersey's laws favor making insurance proceeds available for remediating environmental contamination and compensating the victims of such contamination. *See Morton, supra,* 134 *N.J.* at 30, 629 *A.*2d 831. Indeed, the Appellate Division suggested that Zurich's jockeying for the more hospitable insurance laws of New York best explains its selection of New York as its favored forum. *Sensient Colors, supra,* 388 *N.J.Super.* at 390, 908 *A.*2d 826; *see also Moses Cone, supra,* 460 *U.S.* at 23–26, 103 *S.Ct.* at 941–42, 74 *L.Ed.*2d at 784–86 (noting relevance of choice of law in deciding whether to defer to first-filed action).

We also note the presence of other special equities, which are deserving of lesser weight and by themselves not dispositive in this case. One such special equity is that the New Jersey action has progressed further than the first-filed action in New York. *Cf. Gosschalk, supra,* 48 *N.J.Super.* at 580, 138 *A.*2d 774. Another is that there are *forum non conveniens* factors. *See Am. Home Prods., supra,* 286 *N.J.Super.* at 38–39, 668 *A.*2d 67. It stands to reason that, for purposes of determining the applicability of the pollution-exclusion clause, the documents and witnesses that will likely shed light on whether Kohnstamm's discharge of pollutants into the environment was intentional or accidental are to be found

---

[11] A discussion of applicable New York choice of law rules can be found in *Zurich Insurance Co. v. Shearson Lehman Hutton, Inc.,* 84 *N.Y.*2d 309, 618 *N.Y.S.*2d 609, 642 *N.E.*2d 1065, 1068–70 (1994).

in New Jersey. Besides Kohnstamm's location in Camden for more than half a century, which suggests the presence of witnesses in that area, the EPA and NJDEP have conducted investigations and clean-ups of the contaminated property. We would expect that information from those investigations would play a role in answering the coverage questions that are germane to the declaratory judgment action. Accordingly, judicial efficiency and convenience to the parties and witnesses weigh in favor of New Jersey as the appropriate forum.

The combination of the special equities clearly overcomes the presumption favoring the first-filed action in New York and supports the coverage action proceeding in its natural forum— New Jersey. The trial court's failure to consider and give proper weight to those equities was an abuse of discretion that justified the Appellate Division's reinstatement of the New Jersey action.[12]

## V.

The first-filed rule promotes cooperation and mutual respect among the various jurisdictions of our federal system. In matters of justice, comity—not competition—must be the guiding principle by which each state's courts decide the appropriate choice of forum when substantially similar actions are filed in more than one jurisdiction. The first-filed rule, however, is not unbending and allows for certain well-recognized exceptions that further the interests of fairness and judicial efficiency. In ruling as we do, we seek no parochial advantage for our court system. We have taken an approach that, if applied as a universal rule,

---

[12] We have been informed that the parties have agreed to dismiss the New York litigation if the New Jersey trial court's comity dismissal is not reinstated. There is reason, however, to believe that New York would defer to our determination today even in the absence of the parties' agreement to dismiss the New York action. *See, e.g., Flintkote Co. v. Am. Mut. Liab. Ins. Co.,* 103 *A.D.*2d 501, 480 *N.Y.S.*2d 742, 745 (N.Y.App.Div.1984) (staying first-filed action in New York in favor of second-filed action in California because California was "the most appropriate forum for resolution of the asbestos coverage dispute"), *aff'd o.b.,* 67 *N.Y.*2d 857, 501 *N.Y.S.*2d 662, 492 *N.E.*2d 790 (1986).

would place every state on an equal playing field. If the circumstances were reversed and the waste-infested property were located in New York, given our analysis today, we would expect New Jersey to defer to its sister state, even if the first-filed action were in this state.

Because it failed to identify and give proper weight to the special equities that supported a denial of the motions for a comity stay or dismissal of the New Jersey declaratory judgment action, the trial court abused its discretion. For the reasons we have expressed, we affirm the judgment of the Appellate Division, which reinstated Sensient's complaint, and remand for proceedings consistent with this opinion.

*For affirmance in part/remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN and RIVERA-SOTO—5.

*Opposed*—None.