**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3553-16T1

LEGEND MOVIE POSTERS
CORPORATION, a Nevada
corporation, and XINGLING HU,
a New Jersey resident,

     Plaintiffs-Appellants,

v.

JERRY OHLINGER'S MOVIE
MATERIAL STORE, INC., and
JERRY OHLINGER,

     Defendants-Respondents.

_____

Argued October 1, 2018 – Decided October 22, 2018

Before Judges Gooden Brown and Rose.

On appeal from Superior Court of New Jersey, Chancery Division, Passaic County, Docket No. C-000123-16.

Anthony N. Iannarelli, Jr., argued the cause for appellants.

Douglas M. Schneider argued the cause for respondents (Summers & Schneider, PC, attorneys; Douglas M. Schneider, on the brief).

PER CURIAM

Plaintiffs Legend Movie Posters Corporation and Xingling Hu (collectively plaintiffs) appeal from Chancery Division orders entered on January 11 and March 28, 2017, essentially dismissing plaintiffs' complaint on comity grounds. The January 11, 2017 order denied plaintiffs' order to show cause and granted Jerry Ohlinger's Movie Material Store, Inc. (JOMMS) and Jerry Ohlinger's (collectively defendants) cross-motion "to dismiss or stay" plaintiffs' complaint "in favor of a prior action commenced by [d]efendants in the New York County Supreme Court." The March 28, 2017 order superseded the January 11, 2017 order, clarified that plaintiffs' complaint was dismissed, rather than stayed, and denied plaintiffs' motion for reconsideration. For the reasons that follow, we affirm.

We recite that part of the procedural history and record pertinent to this appeal. On October 22, 2014, JOMMS filed a complaint in the U.S. District Court for the District of New Jersey against Legend Movie Posters Corporation (Legend Corporation), Legend Movie Posters Enterprise Corporation (Legend Enterprise), Sean Chatoff, and Xingling Hu (collectively Legend). In the

complaint, JOMMS, a New York corporation owned and operated by Jerry Ohlinger, alleged that Legend Corporation, a Nevada corporation doing business in New Jersey, and Legend Enterprise, a New Jersey corporation, both owned and operated by Chatoff and Hu, husband and wife, breached their joint venture agreement involving the sale of "movie memorabilia, including scripts, studio photos, posters, [and] promotional materials." According to the complaint, pursuant to their oral agreements, Legend agreed to lease warehouse space in New Jersey to store JOMMS's inventory of collectible movie memorabilia worth millions of dollars. JOMMS agreed to pay the costs of moving the inventory to the warehouse as well as "all expenses for the [w]arehouse, including rent, common charges and insurance," and "Legend agreed to provide staff at the [w]arehouse to service sales from the inventory." Under their agreement, JOMMS was permitted to sell items from the inventory at its discretion without any obligation to share the net profits generated from the sales with Legend. On the other hand, Legend was only permitted to sell select items from the inventory, subject to JOMMS's consent and pricing directives, and was allowed to keep only twenty-five percent of the proceeds of such sales with the remaining seventy-five percent to be paid to JOMMS.

 A-3553-16T1

The complaint stated further that when Legend "unilaterally determined that JOMMS had fallen behind on repaying monies allegedly owed to [Legend]," Legend "unlawfully and improperly took complete control over the [i]nventory, . . . and began selling items without JOMMS's consent or pricing input."[1] According to the complaint, Legend also "refused to pay" JOMMS's "share of the net profits [generated] from such sales," claimed that "they had 'purchased' the complete [i]nventory years earlier for a mere $70,000," and "refused to permit JOMMS to continue to sell items from the [i]nventory." As a result, Legend allegedly "unlawfully converted approximately $5 million worth of [i]nventory," and "interfere[d] with . . . a tentative agreement . . . with a third party to purchase the entire [i]nventory at market value." In the eleven-count complaint alleging causes of action for conversion, prima facie tort, breach of contract, breach of fiduciary duties, and tortious interference with prospective economic advantage, JOMMS sought "a writ of replevin for possession of the [i]nventory," an accounting of all transactions, injunctive relief, and a declaratory judgment.

_____

[1] Although JOMMS acknowledged in the complaint that Legend had, in fact, made loans to JOMMS amounting to "approximately $80,000" to "provide working capital," the parties had allegedly agreed that "any monies owed by [JOMMS] to Legend would be repaid from [JOMMS's] seventy-five percent share of sales made by Legend from the [i]nventory."

Following mediation, on September 14, 2015, the parties entered into a settlement agreement resolving all claims. In the agreement, the parties agreed that JOMMS would take possession of and remove designated items from the warehouse by December 31, 2015, and would pay one half of the monthly rent and utilities for the warehouse through December 31, 2015, regardless of when the property was removed. Further, the parties agreed that JOMMS would execute a promissory note in the amount of $162,500, payable in eighteen months and secured by the personal guarantee of Jerry Ohlinger and a security agreement granting Legend a second priority security interest in JOMMS's assets. Paragraph nine of the settlement agreement provided that "[s]imultaneous[ly] with [the] execution of the Note, Security Agreement and Guarantee[,] the parties shall execute mutual Releases of all claims they have against each other accruing prior to the date hereof, except for claims to enforce this Agreement."

Upon receiving notice of the settlement, on July 9, 2015, the district court entered an order dismissing the case "without prejudice to the right, upon good cause shown within sixty (60) days," to reopen the case "solely to enforce the terms of the settlement agreement." On September 4, 2015, the court entered an order extending the deadline until November 9, 2015. The note, security

agreement and guarantee required under the settlement agreement were executed on December 11 and 12, 2015. However, the mutual releases were never executed as required by paragraph nine of the agreement. On March 24, 2016, JOMMS and Ohlinger (collectively JOMMS)[2] filed a complaint in the Supreme Court of New York seeking to rescind the settlement agreement and damages for its breach. On April 7, 2016, Legend removed the action on diversity grounds to the U.S. District Court for the Southern District of New York.

While JOMMS's motion to remand the case to the New York state court based on deficient removal was pending, on June 24, 2016, Legend moved to reopen the case in the U.S. District Court for the District of New Jersey based upon JOMMS's failure to provide a release as required under the settlement agreement. On December 5, 2016, the court denied Legend's motion to reopen the case, concluding that it was "without jurisdiction" because the prior dismissal orders "provided deadlines" that had expired and Legend could "present their position" in the "ongoing" New York proceedings. The court noted further that "the interests of judicial economy" were "served by avoiding duplicative parallel proceedings." Thereafter, on February 7, 2017, JOMMS's

---

[2] For purposes of clarity, we interchange references to JOMMS and Legend, collectively defendants and plaintiffs, respectively, depending upon the particular action and the specific parties involved.

A-3553-16T1

motion to remand the case from the U.S. District Court for the Southern District of New York to the Supreme Court of New York was granted because the amount in controversy was "below the minimum threshold for federal jurisdiction."

While JOMMS's New York complaint was pending, on September 30, 2016, Legend Corporation and Hu (collectively Legend) filed a verified complaint and order to show cause in New Jersey Superior Court seeking to enjoin JOMMS from "misappropriating" its assets and seeking to "foreclose upon Legend's security interest in [JOMMS's] inventory and assets" based upon JOMMS's default of the settlement agreement. JOMMS filed a cross-motion to dismiss or stay the complaint in favor of the pending New York case, arguing that Legend could assert their claims in the New York action as a counterclaim. On January 11, 2017, Judge Thomas J. LaConte denied Legend's order to show cause and granted JOMMS's motion to dismiss or stay the action.

On January 31, 2017, Legend moved for reconsideration. In its supporting certification, Legend's counsel stated the New York action was "immaterial" to the relief Legend sought in this court and the New York litigation would likely "go on for years" while "[Legend's] interests [would] be at great risk." On March 28, 2017, in an oral decision, Judge LaConte denied Legend's motion for

7

reconsideration. However, acknowledging that the "January 11, 2017 [order] was not artfully drafted," at Legend's request, the judge issued a superseding order to clarify that Legend's complaint was dismissed, rather than stayed.

After recounting at length the litigation's "tortured" procedural history, Judge LaConte determined that Legend "fail[ed] to establish grounds for reconsideration under [Rule] 4:49-2," failed to "point[] out any facts . . . or controlling decisions that have been overlooked," and only "repeat[ed] the arguments previously made to and rejected by the [c]ourt." The judge explained that other than expressing "dissatisfaction with the . . . result of the prior proceedings," Legend "offered no reason why this [c]ourt instead of the New York Supreme Court [was] the proper tribunal" to adjudicate the action. The judge also determined that Legend presented no evidence "that JOMMS [was] liquidating [its] inventory in violation of the security agreement" to warrant injunctive relief.

The judge pointed out that "[JOMMS] chose to bring their claims in New York and commence their action long before [Legend] sued here." According to the judge,

> [Legend] can assert defenses and counterclaims in the . . . earlier pending New York action for the relief they seek. The New York Supreme Court has all the parties before it, so it is just as well positioned as this

[c]ourt to issue an enforceable interim order if appropriate providing the relief sought in this . . . proceeding before this [c]ourt.

Relying on Yancoskie v. Delaware River Port Authority, 78 N.J. 321 (1978), the judge explained that "New Jersey law is clear that where a party commences a later action in New Jersey that duplicates a prior action between the same parties in another jurisdiction, [the] New Jersey action should be dismissed or stayed pending resolution of the prior action."

The judge rejected Legend's assertion that "the settlement agreement or related documents prohibit[ed] litigation in the New York Supreme Court of the parties['] dispute over . . . [their] respective rights and responsibilities thereunder." According to the judge,

> All the . . . settlement agreement states is that the parties consent to jurisdiction of the Superior Court of the State of New Jersey or the United States District Court for the District of New Jersey.[3] An agreement conferring

---

[3] Paragraph fifteen of the security agreement executed by JOMMS in connection with the settlement agreement provided:

> Law Governing. All terms herein contained and the rights, duties and remedies of the parties shall be governed by the laws of New Jersey. In any action brought by [Legend] to enforce this Security Interest, . . . [JOMMS] knowingly, voluntarily and intentionally . . . consents . . . to the jurisdiction of the Superior Court of the State of New Jersey or the United States District Court for the District of New Jersey . . . .

jurisdiction in one for[u]m will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion. That is a quote from [City of New York v. Pullman, Inc., 477 F. Supp. 438 (S.D.N.Y. 1979)].

The security agreement and guaranty in this case do not purport to require [JOMMS] to sue in any particular court. Thus, they are free to use the New York Court to remedy [Legend's] breach of the settlement agreement.

This appeal followed.

We begin by setting forth the principles that guide our analysis. When a substantially similar lawsuit is pending in two jurisdictions, the first-filed rule generally requires that the court in the later-filed action defer to the court that first acquired jurisdiction over the dispute. Yancoskie, 78 N.J. at 324. The rule reflects the principle that any comity analysis begins with the presumption that "the court that first obtains possession of the controversy, or of the property in dispute, must be allowed to dispose of it without interference or interruption from the co-ordinate court." Riggs v. Johnson Cty., 73 U.S. 166, 196 (1868). Like many states, New Jersey adheres to the first-filed rule and ordinarily will stay or dismiss a civil action in deference to the jurisdiction in which the substantially similar litigation was first filed. See Exxon Research & Eng'g Co. v. Indus. Risk Insurers, 341 N.J. Super. 489, 506 (App. Div. 2001); see also CTC

Demolition Co. v. GMH AETC Mgmt./Dev. LLC, 424 N.J. Super. 1, 6 (App. Div. 2012).

Even where the New Jersey court has jurisdiction to hear the case, "[i]f we are to have harmonious relations with our sister states, . . . comity and common sense counsel that a New Jersey court should not interfere with a similar, earlier-filed case in another jurisdiction that is 'capable of affording adequate relief and doing complete justice.'" Sensient Colors, Inc. v. Allstate Ins. Co., 193 N.J. 373, 387 (2008) (quoting O'Loughlin v. O'Loughlin, 6 N.J. 170, 179 (1951)); see also Century Indem. Co. v. Mine Safety Appliances Co., 398 N.J. Super. 422, 426 (App. Div. 2008). The litigation of duplicative lawsuits is wasteful of judicial resources and undermines recognition of the authority of the other jurisdiction to adjudicate the matter. See Sensient, 193 N.J. at 387.

A "clear entitlement to comity-stay relief" is established by proof: "(1) that there is a first-filed action in another state, (2) that both cases involve substantially the same parties, the same claims, and the same legal issues, and (3) that plaintiff will have the opportunity for adequate relief in the prior jurisdiction." Am. Home Prods. Corp. v. Adriatic Ins. Co., 286 N.J. Super. 24, 37 (App. Div. 1995) (footnote omitted). Under such circumstances, "the judge should grant the stay unless plaintiff demonstrates 'special equities.'" Ibid.

A-3553-16T1

"[E]xtenuating circumstances sufficient to qualify as special equities" arise when there are "compelling" reasons "that favor the retention of jurisdiction by the court in the later-filed action." Sensient, 193 N.J. at 387. Such circumstances are present "if an injustice would be perpetrated on a party in the first-filed action and no hardship, prejudice or inconvenience would be inflicted on the other by proceeding in the second-filed case." Id. at 389 (internal citations omitted). A trial court's decision to apply the doctrine of comity requires "a fact-specific inquiry that weighs considerations of fairness and comity," which we review under an abuse of discretion standard. Id. at 389-90.

Similarly, our standard of review on a motion for reconsideration is deferential. "Motions for reconsideration are governed by Rule 4:49-2, which provides that the decision to grant or deny a motion for reconsideration rests within the sound discretion of the trial court." Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015). Reconsideration

> is not appropriate merely because a litigant is dissatisfied with a decision of the court or wishes to reargue a motion, but

>> should be utilized only for those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to

12

> appreciate the significance of probative, competent evidence.
>
> [Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990).]

Thus, we will not disturb a trial judge's denial of a motion for reconsideration absent a clear abuse of discretion. Pitney Bowes Bank, 440 N.J. Super. at 382. An "abuse of discretion only arises on demonstration of 'manifest error or injustice,'" Hisenaj v. Kuehner, 194 N.J. 6, 20 (2008) (quoting State v. Torres, 183 N.J. 554, 572 (2005)), and occurs when the trial judge's decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

Here, we discern no abuse of discretion in Judge LaConte's dismissal of Legend's complaint on comity grounds, or denial of Legend's motion for reconsideration, which was predicated only on Legend's dissatisfaction with the judge's decision. We affirm substantially for the reasons expressed by the judge in his March 28, 2017 oral decision. Legend argues the judge erred in imposing the "extreme sanction" of dismissal, thereby "putting their interests in the settlement at risk." Finding no support in the record for the arguments, we are

13

satisfied that Legend's arguments are without sufficient merit to warrant discussion in a written opinion.  <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION