JARDINE ESTATES, INC., A CORPORATION OF THE STATE
OF NEW JERSEY, PLAINTIFF-APPELLANT, v. WILLIAM
C. KOPPEL AND FLORENCE C. KOPPEL, HIS WIFE,
DEFENDANTS-RESPONDENTS.

Argued June 3, 1957—Decided June 24, 1957.

*Mr. Albert G. Besser* argued the cause for appellant.

*Mr. Sam Weiss* argued the cause for respondents (*Messrs. Jacobson & Winter,* attorneys).

The opinion of the court was delivered by

WACHENFELD, J. This is an appeal by the plaintiff from a judgment below dismissing its action brought for the possession of certain premises and from a jury verdict awarding the defendants $10,000 on their counterclaim.

In the fall of 1954 the parties signed a contract for sale by the plaintiff of premises in Summit, New Jersey, to the defendants for a total purchase price of $38,000, $1,500 down and the balance payable in $300 monthly installments; title to be transferred when the purchase price was reduced to $30,000. The contract contemplated the completion of the house by the plaintiff in accordance with four pages of specifications attached thereto. There was a supplemental agreement made between the same parties in December 1954, modifying and amending some of the terms of the original contract. The defendants have been in possession since January 1955.

Claiming non-payment of the December 1955 purchase price installment and other defaults by the buyers, the plaintiff instituted this action for possession of the premises. The defendants denied the allegations of default and counterclaimed for $12,000 damages, allegedly resulting from the plaintiff's incomplete or defective and unsatisfactory performance of its agreement to build the dwelling in question.

On the close of the plaintiff's case, the trial court dismissed its action for possession on the ground that the requisite notice by registered mail, specified by the supplemental contract, had not been given.

The defendants on their counterclaim submitted proof concerning the many ways in which the plaintiff had allegedly failed to comply with its contract to construct a dwelling in good and workmanlike manner and to supply it with certain items hereinafter mentioned. Damages were claimed as the necessary reasonable cost of replacing or repairing the defective work performed by the plaintiff and completing the unfinished work. The bulk of the defendants' damages was summarized in a written estimate prepared by an expert and admitted into evidence.

Additionally, the defendants claimed the sum of approximately $4,000 to compensate them for a "missing" airconditioning system and other items the plaintiff allegedly was obliged to furnish. The plaintiff's appeal is from both judgments.

The plaintiff is a wholly-owned family corporation, H. Jardine Samurine owning 2% of the outstanding shares of stock and his wife owning 98% of the shares. Samurine actively and solely managed the affairs of the corporation.

Prior to the time the case was actually reached for trial, an excessive number of adjournments had been granted to the plaintiff to enable it to get an attorney to represent it. Two attorneys had already appeared of record and were relieved or sought to be relieved of their responsibility, and it was upon the representations of Mr. Samurine that a third attorney would appear to try the case that several successive adjournments had been granted by the assignment judge. When the matter was again scheduled for trial, no attorney appeared for the plaintiff. The court below was faced with the alternative of dismissing the action and suppressing the defense to the counterclaim, or permitting Samurine, pursuant to his repeated requests, to try the case himself. The assignment judge acceded to Mr. Samurine's plea, and this added to the burdens of the trial judge in controlling the proceedings with fairness to both sides.

█ The plaintiff's action for possession was dismissed at the close of its evidence because of a failure to prove the notice of default had been given by registered mail as specified in the contract. The plaintiff insists that notice by ordinary letter personally delivered or oral notice constituted a sufficient compliance by the plaintiff with the requirements of the amended contract, but does not deny that the specific notice called for in the document was not given.

The court's action was justified by the record. The judgment below dismissing the plaintiff's cause of action for possession is affirmed.

█ Citing *R. R.* 1:12–1(*c*), which categorically provides that a corporation shall not practice law and shall not appear or file any paper in any cause in this State except through an attorney-at-law of this State in good standing, the plaintiff now contends the judgment below, in which the plaintiff corporation appeared and participated *pro se,* is void. See also *N. J. S.* 2A:170–78.

We have difficulty in subscribing to an interpretation of the rule which renders a judgment void, instead of merely voidable at the option of the opposing party, when a corporation illegally appears through its agent. There is no reason why the prevailing party should have to try the authority of the corporate representative as well as his own case. See *Schifrin v. Chenille Mfg. Co.,* 117 *F.* 2d 92 (2 *Cir.* 1941). There is little justification for granting the relief sought here when the court was induced by the plaintiff in interest to permit Mr. Samurine to proceed in its behalf without being obliged to secure a licensed attorney. This is especially so since Samurine and Jardine Estates are for all practical purposes one and the same, and since the trial court was faced with the harsh alternative already discussed.

In *State v. Pontery,* 19 *N. J.* 457, 471 (1955), we held a party "cannot beseech and request the trial court to take a certain course of action, and upon adoption by the court, take his chance on the outcome of the trial, and if unfavorable, then condemn the very procedure he sought and urged, claiming it to be error and prejudicial." We cannot permit the plaintiff to profit from his own wrong.

There is authority elsewhere that a corporation will not be permitted to subsequently avoid an adverse decision because it appeared improperly by an agent and not an attorney-at-law. *Cohn v. Warschauer Sick Support Soc. Bnei Israel,* 19 *N. Y. S.* 2d 742 (*Sup. Ct., App. Term,* 1940). Our philosophy brings us to a like conclusion.

The plaintiff next contends the "unceasing fire of derogatory and hostile remarks" made by the trial court to the plaintiff's president prevented a fair and impartial trial.

The record indicates Samurine resisted fair guidance by the court and was even contemptuous on occasion. Many difficulties were encountered. Samurine alleged he was physically unable to go on with the trial. A doctor was called to examine him to determine his physical condition, and the trial judge offered to grant an adjournment on the counterclaim if Samurine would pay the costs, which he refused to do.

Constant argument between Samurine and counsel for the defendants was the order of the day, creating many problems for the trial judge. The frequency of the judicial warnings and the sharpness of their approach were necessitated by the improper sallies of the plaintiff's lay representative, and the court's attempt to salvage a degree of judicial decorum and equanimity under the trying circumstances deliberately created by the plaintiff will not be declared by us reversible error.

The defendants' counterclaim sought damages flowing from the plaintiff's breach of its contractural obligation to build a dwelling house in a good and workmanlike manner and to sell it and the land. The only default alleged was a failure to complete the work or, alternatively, its poor and unworkmanlike performance. The pretrial order contained only the same claim.

██ Pleadings must fairly apprise the adverse party of the claims and issues to be raised at the trial and they are required to set forth a "statement of the facts on which the claim is based. * * *" *R. R.* 4:8–1. See *Melone v. Jersey Central Power & Light Co.,* 18 *N. J.* 163 (1955); *Hulbert v. Collins,* 22 *N. J. Super.* 217 (*App. Div.* 1952). Parties are customarily limited in their proofs at the trial to the issues as contained in the pleadings and the pretrial order.

██ The claims made in regard to the "missing" items were neither asserted in the counterclaim nor set forth in the pretrial order, nor were they disclosed by the interrogatories submitted and answered. Plaintiff objected to the offer of evidence concerning such items, and we think, therefore, the counterclaimants were foreclosed in this respect under the status of the case as it then existed.

The judgment on the counterclaim is reversed. The cause is remanded for a new trial with the opportunity to the counterclaimants to amend to set forth in full the claims they intend to make so that the plaintiff may have an opportunity for adequate preparation.

The plaintiff also contends error was committed in other respects with regard to the admission of testimony concerning the lack of fixtures allegedly called for by the contract.

The defendant and an expert were permitted to testify that the plaintiff had failed to supply an air-conditioning system, screens, shades, awnings, *etc.,* on the theory that these were required to be furnished by a provision in the contract in small print. It is insisted the plaintiff was not required to furnish such items primarily because their listing is followed by the phrase "if any."

The contract is on a printed form apparently designed for the sale of an already-existing house with the personal property therein. The clause in question is conventionally used in such contracts when it is intended that title to various appurtenances, improvements, and fixtures will pass with the realty. The itemization is followed by the words "if any." In the ordinary case of a completed structure, the intention is that such items are included if in fact they are on the premises, and the clause does not constitute a covenant to install the items if they are not there.

In the case *sub judice* the construction was not completed, and it is significant that several other items, such as "carpets," in the same listing were crossed out by a typewriter. It may be reasonable under these circumstances to conclude the parties intended the covenant in question to constitute an affirmative agreement that the premises would contain the questioned items. The true intent of the parties will have to be resolved by the jury on the basis of the language used and the circumstances involved.

A substantial item of damage, $5,600, represents the estimated cost of bulldozing and filling the land to the rear of the dwelling, and relates to the meaning of a condition in the supplemental contract: "The seller shall grade to the contours of the terrain and seed when weather permits." The query lies as to whether or not, the expression being ambiguous, the proposed work should include developing a gentle slope by bringing in 1,600 cubic yards of earth and removing the existing trees, which might well involve a

departure from the contours of the terrain. Here again, the answer depends upon the true intent of the parties to be decided by the jury from all of the circumstances involved.

A similar problem in ascertaining intention is presented by plaintiff's argument that as a matter of law it was improper to permit defendant's expert to testify to the cost of replacing wooden siding on a front gable with brick and marble. The substance of the contention is that by the supplemental contract defendants waived any obligation on the part of plaintiff to supply brick and marble rather than wood.

The specifications incorporated into the original contract provided that all of the exterior walls should be brick veneer and ten-inch cedar siding and "[i]n front of house shall be mixed brick and Georgia marble stone." One of the amending provisions of the supplemental contract specified that "The purchasers release the seller from furnishing * * * an all brick exterior and in lieu thereof, agree to accept the premises * * * with a partly brick veneer and frame exterior."

Did the supplemental agreement supplant the original contract in this respect and relieve plaintiff of its duty to supply mixed brick and marble facing on the front gable? The jury will have to decide this issue, since the interrelationship and effect of the terms of the two contracts upon each other are by no means so clear that the court can unequivocally, as a matter of law, define the plaintiff's obligation.

■ Finally, plaintiff asserts there was error in receiving certain testimony bearing upon the credibility of Samurine, who had stated on cross-examination that the Acme Airconditioning Company of Chatham, operated by one Hartley, had been employed as the subcontractor in charge of installing refrigerating and air-conditioning equipment on the premises in question. Over objection, defendants' expert witness, Sewitch, was allowed to testify that he had been unable to locate either Hartley or Acme Air-Conditioning in the telephone directory and that the telephone informa-

tion service had stated there were no such listings in Chatham.

 Under the circumstances, the receipt of this evidence was error. The better rule is to allow proof of non-existence or non-residence by a showing that diligent inquiry has failed to reveal the existence or residence alleged. *In re Hunt,* 15 *N. J. Misc.* 331 (*Cir. Ct.* 1937). The hearsay rule should not apply because evidence of fruitless inquiry merely goes toward demonstrating due diligence on the part of the inquirer. The exertion of proper diligence, attended by an inability to find the person sought, in turn combine to serve as circumstantial evidence of non-existence or non-residence. *McCormick, Evidence, p.* 469 (1954); 5 *Wigmore, Evidence* (1940 *ed.*), § 1414 (2).

But here there was no due diligence or inquiry sufficient to come within the above rule. Sewitch merely examined the Chatham telephone book and got in touch with information, despite the fact that two years had elapsed since the time when Samurine had allegedly employed Acme, through Hartley, to act as a subcontractor. During this interval the firm may well have failed or moved. Additionally, Samurine indicated in his testimony he believed Hartley had transferred his business to Summit and was conducting it from his home. Obviously, the inquiry made did not cover this factual situation.

Therefore, this testimony was irrelevant and inadequate to affect even credibility and should have been excluded. Instead, its admission created a distracting side issue which was seized upon and magnified by defendants' counsel in his summation to the jury.

The judgment on the plaintiff's action is affirmed and judgment on the counterclaim is reversed and the cause remanded for a new trial.

*For affirmance and reversal*—Justices OLIPHANT, WACHENFELD, BURLING, JACOBS and WEINTRAUB—5.

*For reversal*—Justice HEHER—1.