707 A.2d 1353

SHARON L. KATZ, PLAINTIFF–RESPONDENT, v.
NEIL F. KATZ, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 4, 1998—Decided March 16, 1998.

Before Judges BAIME, BROCHIN and WEFING.

*Jeffrey A. Donner,* argued the cause for appellant (*Shain, Schaffer & Rafanello,* attorneys; *Mr. Donner,* of counsel; *Mr. Donner* and *Gary L. Maher,* on the brief).

*Lewis M. Seagull,* argued the cause for respondent.

The opinion of the court was delivered by

WEFING, J.A.D.

Defendant appeals from two orders entered in the trial court by two different judges. The first order denied defendant's motion to dismiss for lack of *in personam* jurisdiction. The second order reflects the court's conclusion that the Uniform Gift to Minors Act (UGMA) (*N.J.S.A.* 46:38–13) precludes a custodian-parent from using the funds in a custodial UGMA account to pay for a child's college expenses.[1] In the second order, defendant was directed to reimburse his daughter $25,406.15, the amount he had taken from the UGMA account to pay for her college expenses. Because we are satisfied that the first court erred in its conclusion that it had *in personam* jurisdiction over defendant, we reverse without addressing the propriety of the court's second conclusion.

I.

The parties were married on June 8, 1968 in South Orange, New Jersey. The record is silent where defendant lived prior to that date but plaintiff's parents resided in West Orange, New Jersey. Immediately after the marriage, the couple moved, first to South Carolina and then to Florida. In 1971, while still residing in Florida, their only child, Jaimee Lynn, was born. Shortly thereafter they returned to New Jersey, and defendant enrolled in Seton Hall University School of Law in Newark. During his schooling

---

[1] We use in this opinion the New Jersey citation for this uniform statute. The particular account at issue below, however, was not a New Jersey account.

the family lived in West Orange, New Jersey. When defendant graduated from law school in 1975, he was admitted to the New Jersey bar and commenced the practice of law with a firm located in Montclair. In that same year, the couple purchased a residence in Maplewood, New Jersey. Two years later in 1977, however, they relocated to Pennsylvania.

Shortly after relocating, the two separated and they were ultimately divorced pursuant to a judgment of the Pennsylvania court entered June 6, 1983. That judgment incorporated the property settlement agreement that the parties had previously executed on May 26, 1983. The agreement, which contained various provisions on the parties' responsibility for Jaimee Lynn's support and education, specified it was to be construed in accordance with Pennsylvania law.

Following the divorce, plaintiff and Jaimee Lynn returned to New Jersey, where plaintiff has continued to reside. Jaimee Lynn lived with her mother in New Jersey, except for the periods she attended Emory University in Atlanta, Georgia. Plaintiff and Jaimee Lynn asserted that she returned to reside with her mother while she attended Seton Hall University School of Law, after her graduation from college. Defendant asserted that after her graduation from Emory, Jaimee Lynn resided in New York State even though she attended law school in New Jersey. That minor factual dispute is not material to our decision.

Following his separation from plaintiff, defendant, with two brief exceptions, did not return to New Jersey. In 1980 he moved to Ohio where he began working as an engineering consultant and a business executive. He gave up the practice of law, although he retained his license to practice. In 1985, he returned to New Jersey for three months in connection with his career. He then, however, went back to Ohio where he remained until January 1990 at which point he moved to California. He has resided in California ever since.

Since 1990, defendant has been employed by Hill International, a company which has its corporate headquarters in New Jersey.

He works for Hill's western region, however, and at the commencement of this action he had made only one three-day business trip to Hill's New Jersey offices, in 1993. Indeed, other than his three-month visit in 1985, that three-day stay was defendant's only visit to New Jersey after he moved to Pennsylvania in 1981.

Although defendant owns no real estate in New Jersey, he is a limited partner in an entity which does own two buildings in New Jersey. In 1993, when this matter commenced, he held a two and one-half percent (2–1/2%) interest in a limited partnership, Saron Associates. That same year, Saron merged with thirty-one other limited partnerships, which reduced defendant's ownership interest to 0.047%. While the reconstituted limited partnership retained the two New Jersey buildings previously owned by Saron, the vast majority of its holdings are in New York and in Texas.

Despite defendant's various relocations, he has maintained his status as an attorney of the State of New Jersey and has continued to satisfy the requirements of the New Jersey Lawyers' Fund for Client Protection. He is listed as an active member of the New Jersey Bar in the current New Jersey Lawyers Diary and Manual. The address and telephone that are listed opposite his name, however, are both for California. Despite that listing, defendant is not eligible to practice law in this state. He does not maintain an office here, as required by *R.* 1:21–1, nor does he maintain either an attorney business account or a trustee account, as required by *R.* 1:21–6(a) and *R.* 1:28A–2.

In September 1993, plaintiff commenced this action, alleging that defendant was obligated to contribute to the cost of Jaimee Lynn's legal education; she also sought certain miscellaneous expenses. In a later amendment to her complaint, she alleged that defendant was obligated, under the terms of the 1983 property settlement agreement, to pay for Jaimee Lynn's college education from his own funds and yet had used the proceeds of a UGMA custodial account to meet that obligation. She therefore sought reimbursement to Jaimee Lynn.

Defendant was served by mail in California. He did not immediately answer but rather filed a motion to dismiss for lack of *in personam* jurisdiction. *R.* 4:6–2; *R.* 4:6–3. The trial court, after considering the parties' briefs and oral arguments, concluded that defendant did have sufficient minimum contacts with New Jersey to afford our courts jurisdiction over him. We are satisfied that in reaching that conclusion the trial court erred.

## II.

We begin with some fundamental principles. New Jersey has expressed as its policy its intent to exercise personal jurisdiction over nonresident defendants to the extent "consistent with due process of law." *R.* 4:4–4(b)(1). Our Supreme Court has construed that language to mean that "we will allow out-of-state service to the uttermost limits permitted by the United States Constitution." *Avdel v. Mecure,* 58 *N.J.* 264, 268, 277 *A.*2d 207 (1971).

The United States Supreme Court has said that "due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. State of Washington,* 326 *U.S.* 310, 316, 66 *S.Ct.* 154, 158, 90 *L.Ed.* 95, 102 (1945) (quoting *Milliken v. Meyer,* 311 *U.S.* 457, 463, 61 *S.Ct.* 339, 343, 85 *L.Ed.* 278, 283 (1940)). The Court has since refined that principle to note "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. . . . [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 *U.S.* 235, 253, 78 *S.Ct.* 1228, 1239–40, 2 *L.Ed.*2d 1283, 1298 (1958). *In personam* jurisdiction is appropriate when a defendant has acted in such a purposeful

manner, because "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 *U.S.* 286, 297, 100 *S.Ct.* 559, 567, 62 *L.Ed.*2d 490, 501 (1980).

A state court's exercise of *in personam* jurisdiction over a nonresident implicates the Due Process Clause of the Fourteenth Amendment. *Kulko v. Superior Court of California*, 436 *U.S.* 84, 91, 98 *S.Ct.* 1690, 1696, 56 *L.Ed.*2d 132, 140–41 (1978). Federal constitutional principles are thus binding upon us. *Jaworowski v. Kube*, 276 *N.J.Super.* 474, 478, 648 *A.*2d 261 (App.Div.1994).

These jurisdictional fundamentals are, moreover, fully applicable in matrimonial litigation. "Personal obligations deriving from the marital relationship or its termination, including, among other things, support and alimony, are dependent for adjudication on the court's acquisition of either personal jurisdiction over defendant or *quasi in rem* jurisdiction over property in which he has an alienable interest." *Drobney v. Drobney*, 146 *N.J.Super.* 317, 323, 369 *A.*2d 963 (App.Div.1977).

Finally, we recognize that application of these principles to the facts of a particular matter presents an area "in which few answers will be written 'in black and white. The greys are dominant and even among them the shades are innumerable.'" *Kulko v. Superior Court of California, supra,* 436 *U.S.* at 92, 98 *S.Ct.* at 1697, 56 *L.Ed.*2d at 141 (quoting *Estin v. Estin*, 334 *U.S.* 541, 545, 68 *S.Ct.* 1213, 1216, 92 *L.Ed.* 1561, 1566 (1948)).

## III.

A review of defendant's contacts with New Jersey convinces us that defendant lacks sufficient minimum contacts with New Jersey to permit us to exercise personal jurisdiction over him. We note at the outset that the fact that plaintiff resides in New Jersey is clearly insufficient; her "unilateral activity" cannot create a relationship between New Jersey and defendant. *Han-*

*son v. Denckla, supra,* 357 *U.S.* at 253, 78 *S.Ct.* at 1239–40, 2 *L.Ed.*2d at 1298.

Nor do we consider the fact that defendant at one time lived in this State for approximately five years to be sufficient. We cannot close our eyes to the reality that we live in an increasingly mobile society. That an individual once resided in a state does not confer continuing jurisdiction by the state over that individual no matter where he may relocate over the ensuing years. *Squitieri v. Squitieri,* 196 *N.J.Super.* 76, 86, 481 *A.*2d 585 (Ch.Div.1984).

Defendant left New Jersey seventeen years ago and has only returned here twice, briefly. Whatever ties he may have had with this State have evaporated over the years and New Jersey's power to exercise personal jurisdiction over him has similarly disappeared.

Further, that the parties may have been married in this State does not add to the analysis. *Kulko v. Superior Court of California, supra,* 436 *U.S.* at 93, 98 *S.Ct.* at 1697, 56 *L.Ed.*2d at 142 (1978); *see Landis v. Kolsky,* 81 *N.J.* 430, 437, 409 *A.*2d 276 (1979). They freely moved their marital domicile to Pennsylvania and concluded their marital and familial obligations to each other in Pennsylvania, under Pennsylvania law.

Several factors remain. We turn first to the fact that defendant has a 0.047% interest in a limited partnership that, among all its holdings nation-wide, owns two buildings in New Jersey. This small percentage share in a limited partnership is clearly not the type of activity which would lead an individual to "reasonably anticipate being haled into court" in New Jersey. *World–Wide Volkswagen Corp. v. Woodson, supra,* 444 *U.S.* at 297, 100 *S.Ct.* at 567, 62 *L.Ed.*2d at 501.

Additionally, it is immaterial that defendant's employer, a corporation that transacts business in many states, is headquartered in New Jersey. For a variety of reasons, our state has, over the years, been selected by many businesses to serve as the site of

their corporate headquarters. An employer's business choices do not give us *in personam* jurisdiction over their nonresident employees, at least in matters unrelated to their employment.

We are equally convinced that defendant's license to practice law in this state does not afford a basis to exercise *in personam* jurisdiction over him in a matter totally unrelated to his professional license. Our research has not disclosed a reported New Jersey case which has considered the issue, but there are authorities from other jurisdictions which have reached such a conclusion. *See, e.g., Modlin v. Superior Court,* 176 *Cal.App.*3d 1176, 222 *Cal.Rptr.* 662 (1986) (license to practice medicine in California insufficient to confer *in personam* jurisdiction over New York resident in an application for increased child support); *Ghanem v. Kay,* 624 *F.Supp.* 23 (D.D.C.1984) (that defendant was licensed as a physician in the District of Columbia did not provide jurisdiction over defendant who resided and practiced in Maryland); *Bosarge v. Master Mike, Inc.,* 669 *So.*2d 510 (La.Ct.App.), *writ denied,* 669 *So.*2d 1214 (1996) (possession of Louisiana commercial fishing and gear licenses did not make Alabama defendant subject to jurisdiction in Louisiana for accident which occurred in Alabama waters); *Lebkuecher v. Loquasto,* 255 Pa.Super. 608, 389 *A.*2d 143 (1978) (New Jersey physician licensed in Pennsylvania, but who did not practice there, not subject to suit in Pennsylvania).

We agree with the views expressed in *Lebkuecher v. Loquasto, supra,* in which the court said "[t]he mere possession of a license accomplishes nothing in the way of pecuniary gain; it only broadens opportunities for such gain. It is the actual practice of a profession in Pennsylvania and not the possession of the right to practice that brings a person within the jurisdiction of a ... [c]ourt...." 389 *A.*2d at 145.

Finally, defendant's contacts, even if viewed in the aggregate, carry no more substance than if analyzed individually.

Because we are convinced defendant's motion to dismiss should have been granted at the outset, we choose not to consider whether plaintiff has standing to prosecute this action and wheth-

er defendant's assertion that all parties were fully aware of and concurred in his use of the custodial account to pay for Jaimee Lynn's college education distinguishes this matter from *Cohen v. Cohen*, 258 *N.J.Super.* 24, 609 *A.*2d 57 (App.Div.), *certif. denied*, 130 *N.J.* 596, 617 *A.*2d 1219 (1992).

Reversed.