60 A.3d 522

ALISON TATHAM, PLAINTIFF–APPELLANT, v. SCOTT JOHN TATHAM, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 7, 2013—Decided February 27, 2013.

504

Before Judges FISHER, ALVAREZ and WAUGH.

*Madeline Marzano–Lesnevich* argued the cause for appellant (*Lesnevich & Marzano–Lesnevich, LLC,* attorneys; *Ms. Marzano–Lesnevich,* of counsel, Joseph DiPiazza, on the brief).

*Patricia E. Apy* argued the cause for respondent (*Paras, Apy & Reiss, P.C.,* attorneys; *Ms. Apy,* of counsel; *Elissa A. Gross,* on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

The parties to this appeal are Australian citizens, who, because of defendant John Scott Tatham's work in international financial investment, lived in many places shortly after their 1992 marriage, including Hong Kong, Japan, and China. The family, which includes two teenaged daughters, moved to New York City briefly and then to Rumson, New Jersey, either sometime in 2006 or in

the Summer of 2007.[1] In the Fall of 2008, defendant returned to Singapore, where he has since resided; plaintiff Alison Tatham and their daughters remain in New Jersey.

On July 6, 2011, plaintiff commenced this divorce action, which was subsequently dismissed based on the trial judge's ruling that: the court lacked subject matter jurisdiction; the court could not fairly exert personal jurisdiction over defendant; New Jersey was not a convenient forum for the resolution of the disputes; and service of process was not properly effected. We reverse.

We start with a basic understanding of the facts relevant to the issues. Plaintiff alleged in response to the motion to dismiss that, starting in December 2005, the parties resided in New York City until they moved to Rumson in 2006; she provided no greater specificity as to the date. The judge concluded—apparently accepting the truth of defendant's certifications notwithstanding plaintiff's sworn statements to the contrary [2]—that the parties commenced living in the United States in January 2007, first in New York City and then in Rumson in the Summer of 2007. Although the standard that governed the trial judge's decision on a motion to dismiss requires an assumption of the truth of plaintiff's allegations until resolved at the conclusion of a plenary hearing, *see, e.g., Independent Dairy Workers Union v. Milk Drivers Local 680*, 23 *N.J.* 85, 89, 127 *A.*2d 869 (1956); *Seidenberg v. Summit Bank*, 348 *N.J.Super.* 243, 249–50, 791 *A.*2d 1068

---

[1] The parties dispute the date they moved to Rumson.

[2] To be sure, plaintiffs have the burden of establishing subject matter and personal jurisdiction, but once the necessary jurisdictional facts are supported by sworn statements based on personal knowledge, a defendant's disputation of the material facts does nothing more than impose on the judge the obligation to conduct a plenary hearing on the subject. *See Citibank, N.A. v. Estate of Simpson*, 290 *N.J.Super.* 519, 531–33, 676 A.2d 172 (App.Div.1996); *Corporate Dev. Spec., Inc. v. Warren–Teed Pharm., Inc.*, 99 *N.J.Super.* 493, 498, 240 A.2d 450 (App.Div.), *certif. denied*, 52 *N.J.* 535, 247 A.2d 16 (1968); *see also Sajjad v. Cheema*, 428 *N.J.Super.* 160, 177, 181–82, 51 A.3d 146 (App.Div.2012). The judge is not entitled to favor one certification over another in ruling on a defendant's motion to dismiss on those grounds.

(App.Div.2002), we do not find this factual dispute particularly meaningful.

Plaintiff also asserted that, at the time defendant returned to Singapore in the Fall of 2008, they agreed plaintiff and the children should remain in the United States. Defendant regularly returned to New Jersey to visit his daughters [3] until June 2011 when plaintiff discovered circumstances, which we need not discuss, that caused a permanent rift in the marriage. Plaintiff commenced this action the following month.

Defendant moved to dismiss on the four grounds mentioned above. The judge granted the motion, and plaintiff appeals, arguing, the lack of a legal or factual basis for dismissal; she also argues, as she did in the trial court, that defense counsel should have been disqualified because plaintiff consulted with defense counsel's partner prior to her retention of other counsel.

I

## SUBJECT MATTER JURISDICTION

We reject defendant's forceful attempts to conflate the concepts of subject matter and personal jurisdiction. The scope of subject matter jurisdiction is governed by the extent to which the Legislature chooses to allow litigants to seek divorce in this State. *See Hervey v. Hervey*, 56 *N.J.Eq.* 424, 426, 39 *A.* 762 (E. & A.1898) (holding the matrimonial court's "power is what the statute gives it"); *Schluter v. Schluter*, 23 *N.J.Super.* 409, 415, 93 *A.2d* 211 (App.Div.1952) (holding that "the jurisdiction of Chancery in suits for divorce, nullity, or maintenance is purely statutory"), *certif. denied*, 11 *N.J.* 583, 95 *A.2d* 644 (1953). The Legislature has declared that the "Superior Court shall have jurisdiction of all causes of divorce, dissolution of a civil union, bed and board divorce, legal separation from a partner in a civil union couple or nullity when either party is a bona fide resident of this State." *N.J.S.A.* 2A:34–8; *see also N.J.S.A.* 2A:34–10.

---

[3] The frequency of these return trips is not revealed by the record.

In this context, the concept of "bona fide resident" is equated with "domiciliary." *Gosschalk v. Gosschalk,* 48 *N.J.Super.* 566, 572, 138 *A.*2d 774 (App.Div.), *aff'd o.b.,* 28 *N.J.* 73, 145 *A.*2d 327 (1958); *see also Innes v. Carrascosa,* 391 *N.J.Super.* 453, 482, 918 *A.*2d 686 (App.Div.), *certif. denied,* 192 *N.J.* 73, 926 *A.*2d 857 (2007). An individual's choice of domicile is established by "physical presence" coupled with "the concomitant unqualified intention to remain permanently and indefinitely." *Gosschalk, supra,* 48 *N.J.Super.* at 573, 138 *A.*2d 774. In the setting of a divorce action, as then Judge (later Justice) Schettino expressed for this court (in an opinion adopted by the Supreme Court when it affirmed, 28 *N.J.* at 74, 145 *A.*2d 327), for there to be an acquisition of a domicile for divorce matters:

> there must be a "voluntary" change of residence, the residence at the place chosen for the domicile must be actual, that to the *factum* of residence there must be added the *animus manendi,* that that place is the domicile of a person in which he has "voluntarily" fixed his habitation, not for a temporary or special purpose, but with the present "intention" of making it his home, unless or until something which is uncertain or unexpected shall happen to induce him to adopt some other permanent home.
>
> [48 *N.J.Super.* at 573, 138 *A.*2d 774]

Although, as mentioned, the date of the parties' move to New Jersey was disputed, and plaintiff was entitled to an assumption of the truth of her assertion that the parties moved to Rumson in 2006, we may for present purposes utilize defendant's contention that they moved to Rumson in the Summer of 2007. This satisfies the "physical presence" element.

More importantly, plaintiff has asserted—and defendant has not disputed—that she intended to make New Jersey her permanent home notwithstanding defendant's return to Singapore in 2008.[4] There is no evidence to suggest that plaintiff intended to move with defendant from New Jersey to Singapore or any other location. Plaintiff indisputably became a "bona fide resident" of

---

[4] In his appeal brief, defendant acknowledges that plaintiff "unilaterally declined to join [him] [in Singapore in the Fall of 2008], and she remained in the United States[;][i]t quickly became clear that this separation would be permanent." The clear import of this and other similar statements in defendant's trial

New Jersey, within the meaning of *N.J.S.A.* 2A:34–8 and –10, no later than December 2008 when she remained in New Jersey after defendant moved to Singapore.[5] The court, thus, possessed subject matter jurisdiction over this divorce action.[6]

The trial judge erred in concluding that the court lacked subject matter jurisdiction over the marriage.

## II

## PERSONAL JURISDICTION

Whether it is appropriate for a court to exert personal jurisdiction is not examined from a standpoint of what disputes the

---

court certifications support plaintiff's claim of an intention to permanently remain in New Jersey.

[5] Even an acceptance of defendant's view of the facts requires a finding that plaintiff became domiciled in New Jersey much earlier than June 2011; in his words this intention became apparent to him "quickly" after he returned to Singapore in the Fall of 2008. In the certification he filed in the trial court, defendant described their move to Rumson in the Summer of 2007, and agreed that it was "[p]laintiff's decision to remain in the United States," which he later "assist[ed]" by "transferr[ing] in excess of $270,000 . . . to her, in June of 2011."

[6] It does not matter, as defendant mistakenly argues, that only one of the parties is domiciled in New Jersey. *Meeker v. Meeker*, 52 *N.J.* 59, 68, 243 *A.*2d 801 (1968). We also find irrelevant the fact, asserted by defendant, that to retain her visa, plaintiff has been or will be required to periodically leave and reenter the United States. That argument misunderstands that although physical presence is an element in determining an individual's choice of domicile, the individual's state of mind is also important. An individual, of course, may at times leave the geographic boundaries of the domicile; that does not mean that the individual's domicile has changed, otherwise a New Jersey resident would be deemed to have changed domicile by traveling to Madison Square Garden to attend a basketball game. It is the intent to return that matters. As we said in *Cromwell v. Neeld*, 15 *N.J.Super.* 296, 300, 83 *A.*2d 337 (App.Div.1951), domicile is "the place where [a person] has his true, fixed, permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning, and from which he has no present intention of moving." *See also In re Jacobs*, 315 *N.J.Super.* 189, 193–94, 717 *A.*2d 432 (Ch.Div.1998). That plaintiff may occasionally leave the country for visa purposes does not cause a change in domicile if she retains the intention of returning to New Jersey.

forum may have an interest in adjudicating, but is instead guided by the fairness of the choice of forum from the defendant's viewpoint. That is, the court must look to a defendant's connection to the forum and whether it is fair—in the constitutional sense—for the defendant to be haled into the forum to litigate the dispute. *Shaffer v. Heitner,* 433 *U.S.* 186, 216, 97 *S.Ct.* 2569, 2586, 53 *L.Ed.*2d 683, 705 (1977). We conclude that defendant's own assertions demonstrate the court may reasonably exercise personal jurisdiction over him without running afoul of the due process clause and notions of fair play and substantial justice.

In the matrimonial context, the test is the same; the court must examine whether there is "a sufficient connection between the defendant and the forum State to make it fair to require defense of the action in the forum," *Kulko v. Superior Court of Cal.,* 436 *U.S.* 84, 91, 98 *S.Ct.* 1690, 1696, 56 *L.Ed.*2d 132, 141 (1978), which involves a consideration of whether a defendant has had the requisite minimum contacts with New Jersey, *Shah v. Shah,* 184 *N.J.* 125, 138, 875 *A.*2d 931 (2005), and whether the exercise of jurisdiction comports with "fair play and substantial justice," *Milliken v. Meyer,* 311 *U.S.* 457, 463, 61 *S.Ct.* 339, 343, 85 *L.Ed.* 278, 283 (1940). In essence, these principles pose the question: is the exercise of personal jurisdiction reasonable in the overall context of the matter? *Kulko, supra,* 436 *U.S.* at 92, 98 *S.Ct.* at 1697, 56 *L.Ed.*2d at 141. These principles are designed to ensure that a defendant is not unfairly burdened with litigating in a distant or inconvenient forum and that the forum does not exceed the rightful limits of its sovereignty. *World–Wide Volkswagen Corp. v. Woodson,* 444 *U.S.* 286, 292, 100 *S.Ct.* 559, 564, 62 *L.Ed.*2d 490, 498 (1980).

We are satisfied that the record demonstrates defendant has had sufficient contact with New Jersey and that it would not offend the interests of fair play and substantial justice to require him to litigate in our courts. Defendant voluntarily entered the State and resided here—even assuming the truth of his version of a disputed allegation—for thirteen months with his family. It is, in fact, the last place the parties resided together as a married

couple.[7]   These marital partners also rented a home in New Jersey, and they unsuccessfully attempted to purchase a home in Rumson.   Defendant opened bank accounts in New Jersey,[8] purchased a motor vehicle that remains in New Jersey and obtained a New Jersey drivers license.   Defendant also provided $300,000 for plaintiff's business venture in New Jersey,[9] and has sent to plaintiff in New Jersey $20,000 per month since their separation in 2008, and $1000 per month for the daughters' incidental expenses. The children are domiciled here.[10]   Until shortly before the commencement of this action in the Summer of 2011, defendant regularly visited the children here, and has visited them at least once since.

In arguing these contacts are insufficient, defendant greatly relies on *Kulko*, which he refers to as "[t]he most relevant United

---

[7] Indeed, the record reveals that the parties rarely stayed in any location for a longer sustained period of time. They were married in Australia in July 1992 but, according to defendant, did not live there again until 2003 and then only briefly.   Defendant also stated in a certification that they resided together:  in Singapore from 1993 to 1994, from 1997 to 1998, from 2000 to 2001, and from 2005 to 2007;  in China from 1996 to 1997 and from 1998 to 2000;  and in Tokyo from 1994 to 1996 and from 2001 to 2003.

[8] We assume that defendant concedes this, albeit in an indirect way, when he said in his certification that "all but two or our accounts in which liquid assets are held and managed are located outside of the United States."   We assume the excepted two were in the United States.

[9] According to defendant, the establishment of this business was to assist plaintiff in obtaining an E–2 visa, which defendant has described as "a unique, non-immigrant status visa, based upon reciprocal trade agreements existing between the United States and Australia, which grants a foreign national, prepared to engage in active entrepreneurial enterprise, permission to remain in the United States for those purposes."   He claims he made this investment in Twenty Seven Latitude, LLC, in which plaintiff is the principal owner, upon plaintiff's agreement that the divorce action would take place in Australia; plaintiff denies they agreed the divorce action would occur in Australia.

[10] The oldest child attends a university in Pennsylvania.   There is no evidence, however, to suggest that she does not remain domiciled with her mother and sister in New Jersey.

States Supreme Court decision" on the exercise of long-arm jurisdiction in a family law context, as well as our own decision in *Katz v. Katz*, 310 *N.J.Super.* 25, 707 *A.*2d 1353 (App.Div.1998). The facts of those cases are distinctly different and, in fact, compel a rejection of defendant's arguments.

In *Kulko*, the parties were domiciled in New York when they married in California in 1959 while the husband stopped for three days in California en route from Texas to Korea for a tour of military duty. 436 *U.S.* at 86, 98 *S.Ct.* at 1694, 56 *L.Ed.*2d at 138. The wife returned to New York, as did the husband after leaving Korea. *Id.* at 87, 98 *S.Ct.* at 1694, 56 *L.Ed.*2d at 138. Their two children were born in New York, where they resided as a family until they separated and the wife moved to California in 1972. *Ibid.* Later, the wife flew back to New York to execute a settlement agreement, which was drawn up in New York and by which the parties agreed, among other things, that the children would stay with their father in New York during the school year and spend certain holidays and other time with their mother in California. *Ibid.* After obtaining a divorce in Haiti, the wife flew to California where she remarried. *Ibid.* Within a few years, both children had traveled to California to reside with their mother on a more permanent basis. *Id.* at 87–88, 98 *S.Ct.* at 1694, 56 *L.Ed.*2d at 138. In 1976, a few months after the second's child arrival in California, the wife commenced an action in California, seeking to establish the Haitian divorce decree as a California judgment and to modify the judgment to award her full custody of the children and an increase in child support. *Id.* at 88, 98 *S.Ct.* at 1694, 56 *L.Ed.*2d at 138–39. The husband moved for a dismissal, claiming he lacked sufficient contact with California to permit the exercise of personal jurisdiction over him. *Id.* at 88, 98 *S.Ct.* at 1695, 56 *L.Ed.*2d at 139. A divided California Supreme Court concluded it was fair and reasonable for defendant to be required to defend in California because he arranged for one child to fly to California and acquiesced in the other's move to California. *Id.* at 89–90, 98 *S.Ct.* at 1695, 56 *L.Ed.*2d at 139.

The Supreme Court determined that the state court's "application of the minimum-contacts test in this case represents an unwarranted extension of *International Shoe* [ [11] ] and would, if sustained, sanction a result that is neither fair, just, nor reasonable." *Id.* at 92, 98 *S.Ct.* at 1697, 56 *L.Ed.*2d at 141. The Court found the fact that these New York residents had married in California while there for three days before the husband went to Korea—thirteen years earlier than the events in question—was inconsequential: "[t]o hold such temporary visits to a State a basis for the assertion of in personam jurisdiction over unrelated actions arising in the future would make a mockery of the limitations on state jurisdiction imposed by the Fourteenth Amendment." *Id.* at 93, 98 *S.Ct.* at 1697, 56 *L.Ed.*2d at 142. The Court also held that the wife's "unilateral activit[ies]" could not satisfy the requirement that the husband have contact with the forum state and that it is " 'essential in each case that there be some act by which the defendant purposefully avails [himself] of the privilege of conducting activities within the forum State.' " *Id.* at 93–94, 98 *S.Ct.* at 1697, 56 *L.Ed.*2d at 142 (quoting *Hanson v. Denckla,* 357 *U.S.* 235, 253, 78 *S.Ct.* 1228, 1240, 2 *L.Ed.*2d 1283, 1298 (1958)).

Seizing on the Court's reference to "temporary visits" and the plaintiff's "unilateral activities," defendant here contends that *Kulko* requires a holding that our courts may not exercise personal jurisdiction over him. Defendant, however, takes far too many liberties with these terms. The "temporary visits" to the forum referred to in *Kulko* are a far cry from what defendant would claim is "temporary" here. In *Kulko,* the temporary visit was a serviceman's three-day stopover on the way to Korea; here, the "temporary visit" was defendant's residency in New Jersey with his family for at least thirteen months (perhaps longer). And, unlike *Kulko,* where the temporary visit to California occurred thirteen years earlier, the time defendant spent establishing a

---

[11] *Int'l Shoe Co. v. Washington,* 326 *U.S.* 310, 66 *S.Ct.* 154, 90 *L.Ed.* 95 (1945).

home with his family in New Jersey ended less than three years before commencement of the action.

In addition, the actions of the wife in *Kulko* in moving to and having the children reside with her in the forum state were truly unilateral, with little involvement of the husband beyond mere acquiescence, while here—to repeat—the family moved together first to New York and then to New Jersey. Certainly, if plaintiff had moved from Australia to New Jersey with the children, while defendant remained behind, only acquiescing in their move, it would be unfair to view his wife and children's residency in New Jersey as a basis for haling him into a New Jersey court. But that is not what happened.

Defendant's attempt to analogize this case to *Katz* is similarly unavailing. In *Katz*, the parties married in New Jersey in 1968, and resided in New Jersey where defendant attended and graduated from law school. Upon graduation, he became a member of the New Jersey bar. The parties, however, moved to Pennsylvania in 1977, separated soon thereafter, and were divorced by a Pennsylvania court in 1983. Other than two business trips to New Jersey—for a three-month period in 1985 and a three-day period in 1993—the defendant resided in Pennsylvania, then Ohio and finally California. The defendant did, however, retain his New Jersey law license and paid the required contributions to New Jersey's client security fund. The plaintiff in *Katz* commenced a New Jersey action in 1993 seeking, among other things, the defendant's contribution to the college expenses of one of their children. We found that the defendant's continued possession of his New Jersey law license, his affiliation with a business having corporate headquarters in New Jersey, and his 2.5% interest in a limited partnership [12] that owned two New Jersey buildings, were insufficient to permit the exercise of personal jurisdiction over him

---

[12] During the year the action in question was filed, the limited partnership merged with thirty-one other partnerships, reducing the defendant's interest to 0.047%. *Id.* at 29, 707 A.2d 1353.

because those few contacts had no nexus to the plaintiff's cause of action, *see C.L. v. W.S.*, 406 *N.J.Super.* 484, 494, 968 *A.*2d 211 (App.Div.2009), and because notions of fair play and substantial justice would have otherwise been offended. *Katz, supra,* 310 *N.J.Super.* at 32–33, 707 *A.*2d 1353.

As we have demonstrated, the facts in this case are different from *Kulko* and *Katz.* Our holding that personal jurisdiction may reasonably be exerted over defendant here is also supported by *C.L.,* where we considered whether personal jurisdiction could be asserted over a nonresident defendant in a 2005 action claiming that he was the natural father of a child born in New Jersey in 1987. The plaintiff alleged that she was engaged to the defendant, who was then a Pennsylvania resident, that the defendant frequented her New Jersey home and that they had sexual relations in New Jersey in 1986. Since that time, however, the defendant either resided in Pennsylvania, Georgia or North Carolina. Finding that the defendant's contacts with New Jersey so many years earlier specifically related to the cause of action, we distinguished *Katz* and concluded that New Jersey's exertion of personal jurisdiction over the defendant satisfied notions of fair play and substantial justice. *C.L., supra,* 406 *N.J.Super.* at 494–95, 968 *A.*2d 211. Defendant has far greater New Jersey contacts, which are closer in time to the lawsuit, than in *C.L.*

In the final analysis, we emphasize that the minimum contacts test is not "mechanical." *Kulko, supra,* 436 *U.S.* at 92, 98 *S.Ct.* at 1697, 56 *L.Ed.*2d at 141. Because the test turns on what is reasonable, the *Kulko* Court observed "that this determination is one in which few answers will be written 'in black and white. The greys are dominant and even among them the shades are innumerable.'" *Ibid.* (quoting *Estin v. Estin,* 334 *U.S.* 541, 545, 68 *S.Ct.* 1213, 1216, 92 *L.Ed.* 1561, 1566 (1948)). Unlike the distinguishable authorities urged by defendant in support of his position, defendant voluntarily entered New Jersey with the intent to reside and make a home with his family while he worked in New York City; he was present in New Jersey while possessing that

intent for at least thirteen months—a mere three years before commencement of this divorce action. Plaintiff and the children remain here, and defendant has sent funds into New Jersey for the support of plaintiff and the children, whom he has also since visited in New Jersey. We conclude that the trial judge erred in determining that personal jurisdiction over defendant could not be exerted by a New Jersey matrimonial court.

## III

### FORUM NON CONVENIENS

■ Defendant, at present a Singapore resident, argues that this divorce action should be litigated in Australia, which is approximately 1700 miles from his own residence or, viewed another way, an eight-hour flight away. In that sense only, Australia represents a more "convenient" forum for defendant than New Jersey, which is 9500 miles, or a twenty-hour flight, from Singapore. From plaintiff's perspective, the Australian forum is nearly 11,000 miles or a twenty-one hour flight, if a direct flight were available. Clearly, Australia represents an inconvenient forum—in the literal sense—for both parties.

■ The doctrine of forum non conveniens is an equitable doctrine founded on the notion that a court should decline to exercise jurisdiction over a dispute when its disposition in another jurisdiction "will best serve the convenience of the parties and the ends of justice." *Gore v. U.S. Steel Corp.*, 15 *N.J.* 301, 305, 104 *A.*2d 670 (1954). There is in New Jersey, however, a "strong presumption" in favor of the choice made by a resident who chooses a home forum. *Yousef v. General Dynamics Corp.*, 205 *N.J.* 543, 557, 16 *A.*3d 1040 (2011). Stated another way, plaintiff's choice of forum is "entitled to preferential consideration." *Ibid.*

Such questions are entrusted to the trial court's sound discretion. *Ibid.* In this case, however, the trial judge's oral and written decisions contain no analysis of the competing values germane to

the subject.[13]  As a result, because no factual dispute regarding the distances between the parties and the fora has been presented, and so as to not further delay the disposition of this lawsuit, we exercise original jurisdiction and, in exercising the discretion with which we are thus imbued, conclude that defendant is not entitled to dismissal on this ground.

The record reflects that defendant has considerable financial means [14] to overcome the travel cost that may be involved in litigating in New Jersey.  Indeed, in one certification, defendant acknowledged that in March 2012 he "visited New York, then Miami;  then [he] drove to [the older daughter's university in Pennsylvania];  and [New Jersey] to visit [the younger daughter]." In short, defendant has not demonstrated it would be a hardship for him to travel to New Jersey in connection with this litigation since he will undoubtedly wish to also come to the area to visit with his daughters in the future.

In these circumstances, we conclude that defendant has not overcome the strong presumption to which plaintiff's choice of forum is entitled.

## IV

## SERVICE OF PROCESS

There is no dispute that plaintiff was required to effect service of process on the nonresident defendant through the use of an outside process server.  According to *Rule* 4:4–4(b)(1)(B),

---

[13] Indeed, the judge's opinion cannot be fairly read as containing any discussion of forum non conveniens.  His order, however, mentions the doctrine of forum non conveniens as a basis for dismissal.  Because we review orders, not opinions, *Do–Wop Corp. v. City of Rahway*, 168 *N.J.* 191, 199, 773 *A.2d* 706 (2001), we have been obligated to consider whether dismissal could be based on this doctrine.

[14] Plaintiff alleged, and defendant did not dispute, that he earns approximately $700,000 annually.

personal service may be accomplished outside the United State's territorial jurisdiction:

> in accordance with any governing international treaty or convention to the extent required thereby, and if none, in the same manner as if service were made within the United States, except that service shall be made by a person specially appointed by the court for that purpose....

The parties agree there is no applicable international treaty or convention. As a result, in attempting personal service, plaintiff was required to seek the trial court's appointment of a process server in Singapore. There is also no dispute that plaintiff's counsel at the time [15] engaged a process server, who personally served defendant, without seeking the trial court's approval. In this manner, defendant received actual notice of the suit but claims here that service was not properly effected in accordance with our court rules.

The trial judge viewed the act of seeking approval of a foreign process server to be, in his word, "ministerial." And neither defendant nor the trial judge has suggested at the time a reason why the process server retained by plaintiff was an inappropriate choice or that he suffered from some disqualifying condition. Notwithstanding, the trial judge viewed plaintiff's technical failure as fatal to plaintiff's lawsuit.

The judge's reasoning was based on his determination that he lacked jurisdiction to cure plaintiff's error or to otherwise act in the case. That is, the judge circularly held that he could not remedy plaintiff's error because he lacked jurisdiction and that he lacked jurisdiction because service of process was flawed:

> The plaintiff's request to attempt to perfect service, essentially a "do-over," will also be denied. The [c]ourt's power derives from its jurisdiction. If there is no jurisdiction, the [c]ourt simply has no authority to act. "The requirements of the rules with respect to service of process go to the jurisdiction of the Court and must be strictly complied with. Any defects ... are fatal and leave the Court without jurisdiction and its judgment void."

---

[15] Plaintiff's current counsel was retained after the action was dismissed by the trial judge.

In the above holding, the trial judge quoted from and relied on *Driscoll v. Burlington–Bristol Bridge Co.,* 8 *N.J.* 433, 493, 86 *A.*2d 201, *cert. denied,* 344 *U.S.* 838, 73 *S.Ct.* 25, 97 *L.Ed.* 652 (1952). This reliance was mistaken, as the quoted portion of *Driscoll* has never been understood as precluding the correction of technical defects in the service of process nor even understood as requiring relief from a judgment based on insufficient service of process where the defect did not amount to a deprivation of due process. *See ATFH Real Property, LLC v. Winberry Realty Partnership,* 417 *N.J.Super.* 518, 525, 10 *A.*3d 889 (App.Div.2010), *certif. denied,* 208 *N.J.* 337, 27 *A.*3d 950 (2011); *see also Jardine Estates, Inc. v. Koppel,* 24 *N.J.* 536, 541, 133 *A.*2d 1 (1957); *Gobe Media Group, LLC v. Cisneros,* 403 *N.J.Super.* 574, 578–79, 959 *A.*2d 892 (App. Div.2008). Moreover, *Driscoll* concerned the validity of *a judgment* entered in the absence of proper service of process, a question not posed here because the case has not yet gotten out of the blocks. There is no impediment on the court's jurisdiction in ensuring service of process was effective or entering such orders as are necessary to require effective service, and *Driscoll* does not suggest otherwise.

Logically interpreted, the trial judge's holding would have also precluded plaintiff from seeking the appointment of a process server at the outset of the action. That is, if we are to assume that jurisdiction is only acquired when service of process is effected and assume further that until jurisdiction is acquired the court, in the trial judge's words, "simply has no authority to act," then the court could never enter an order pursuant to *Rule* 4:4–4(b)(1)(B). *Driscoll* does not compel such a holding. The Court determined in *Driscoll* that there was a want of jurisdiction to support *a judgment* that was entered in the defendant's absence. The Court did not hold there was a lack of jurisdiction to permit a different method of service of process or to enter an order in aid of a prior failed attempt at service.

The trial judge also mistakenly held that plaintiff should not be permitted a "do-over." We interpret the judge to mean that a

plaintiff has one and only one opportunity to effect service of process and, when failing to effect service, an action must be dismissed. The court rules do not recognize this "one-and-done" theory. The rules do not limit the number of times a plaintiff may attempt service of process, nor do they suggest that the failure to effect service on the first try requires a dismissal of the complaint, while still permitting the filing of a new complaint.[16] *Rule* 1:1–2 declares that the rules "shall be construed to secure a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." *See Ragusa v. Lau*, 119 *N.J.* 276, 283–84, 575 *A.2d* 8 (1990); *Prof'l Stone, Stucco & Siding Applicators, Inc. v. Carter*, 409 *N.J.Super.* 64, 68, 975 *A.2d* 1039 (App.Div.2009). The trial judge's holding that a failed attempt at service requires dismissal—which may be followed by the filing of a new complaint with a new attempt at service—is hardly simple, inexpensive, fair or just.

We conclude that the trial judge's ruling that he lacked jurisdiction to endorse the appointment of the process server nunc pro tunc, or enter other orders in aid of plaintiff's attempt to effect service of process, was mistaken, and a dismissal for this reason was erroneous.

To avoid any additional delay, and because neither defendant nor the trial court suggested any reason why the process server would not have been approved if plaintiff's counsel had asked at a more propitious moment, we exercise original jurisdiction and

---

[16] Defendant seeks our endorsement of this approach, undoubtedly so that he may argue, if plaintiff were to refile, that his Australian complaint, which we assume from the record was filed sometime in December 2011 was "first-filed" and that the New Jersey court, upon the filing of a new complaint, would be required to defer to the Australian action, which would have, through these machinations, assumed the "first-filed" position. *See Sensient Colors Inc. v. Allstate Ins. Co.*, 193 *N.J.* 373, 386, 939 *A.2d* 767 (2008). That question, however, may not be as simple as assumed, because "special equities may lead a court to disregard the traditional deference paid to the first-filed action." *Id.* at 387, 939 *A.2d* 767; *CTC Demolition Co., Inc. v. GMH AETC Mgmt./Dev. LLC*, 424 *N.J.Super.* 1, 6–7, 34 *A.3d* 1258 (App.Div.2012).

hereby declare, nunc pro tunc, that the process server was authorized pursuant to *Rule* 4:4–4(b)(1)(B), when service of process was effected in Singapore on October 3, 2011.

## V

## DEFENSE COUNSEL'S DISQUALIFICATION

In the trial court, plaintiff sought defense counsel's disqualification because plaintiff had conferred with—but did not retain—another partner of the law firm which later was retained by and currently represents defendant. Because he dismissed the complaint, the trial judge found this issue to be moot. In light of today's judgment, the issue is no longer moot. We, therefore, remand for further proceedings regarding plaintiff's application to disqualify counsel.

Reversed and remanded.