**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3095-18T1

LESLIE MARTINEZ-GOMEZ,

    Plaintiff-Appellant,

v.

UNITED DOMINICANS OF
PERTH AMBOY, ROBERT N.
WILENTZ ELEMENTARY, and
PERTH AMBOY BOARD OF
EDUCATION,

    Defendants-Respondents,

and

CITY OF PERTH AMBOY,

    Defendant.

_____

Submitted January 21, 2020 – Decided March 5, 2020

Before Judges Sabatino and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-4270-16.

Levinson Axelrod, PA, attorneys for appellant (Adam L. Rothenberg, on the briefs).

Law Office of Gerald F. Strachan, attorneys for respondent United Dominicans of Perth Amboy (Matthew Raymond Panas, on the brief).

Kent & McBride, PC, attorneys for respondents Perth Amboy Board of Education and Robert N. Wilentz Elementary (Jay David Branderbit, Caitlin A. Harley and Alysia J. Remaley, on the brief).

PER CURIAM

In this personal injury action, plaintiff Leslie Martinez-Gomez appeals from a Law Division order granting summary judgment to defendants United Dominicans of Perth Amboy (United), the Robert N. Wilentz Elementary, and the Perth Amboy Board of Education (collectively the Board). We affirm.

I.

We take the facts from the summary judgment record, viewing them in the light most favorable to plaintiff. Angland v. Mountain Creek Resort, Inc., 213 N.J. 573, 577 (2013) (citing Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523 (1995)). Plaintiff was a food vendor at a three-day festival (the Festival) held by United on the Board's property. While returning from using a portable toilet provided by United, she tripped and fell when crossing a concrete walkway. At the time, United, a non-profit organization, was permitted to use the property by

2

defendant City of Perth Amboy (City) and the Board for its annual Festival, which was open to the general public and held on Wilentz Field.

Since the Festival lasted until nightfall, United rented portable light towers. United and the Perth Amboy Police Department oversaw placement of the light towers. The three-day Festival drew five to ten thousand attendees at any given time.

To accommodate the large crowd, United provided portable restrooms. The portable restrooms were placed immediately in front of guardrails lining the perimeter of the school's asphalt parking lot. In a section of the parking lot without guardrail, a concrete, curving sidewalk connects the parking lot to Wilentz Field. Grass covers either side of the curved sidewalk. Neither United nor the Board placed any fencing between the parking lot and the grass area that funneled attendees towards the sidewalk. Temporary fencing only surrounded the Festival's beer garden.

Plaintiff and her sister worked as hot dog vendors at the Festival. They paid United an $800 vendor fee. Plaintiff signed a Vendor Registration Form agreeing to hold United and the City harmless "for any loss, injury, theft or damage" suffered by any vendor or employee "as a direct or indirect result of the Festival."

A-3095-18T1

Plaintiff and her sister arrived early Friday afternoon along with plaintiff's husband, her stepdaughter, and several friends. Around 10:00 p.m., plaintiff and her stepdaughter walked to the portable toilets, crossing the sidewalk and adjoining grass school yard onto the parking lot without incident. After using the portable toilets, the pair retraced their steps by walking from the parking lot, onto the grass, then stepping back onto the curved sidewalk. According to plaintiff, she tripped on a portion of the sidewalk, fell forward, and fractured her left hip. At the time, she was wearing "clogs" that were open in the back. Her stepdaughter was in front of her.

Plaintiff estimated that the sidewalk was elevated "about two to three inches above the grassy area where she fell." The sidewalk was on the property that is either owned, or leased, by the Board.[1]

Plaintiff contends there was an unreasonable risk of harm created by holding the Festival at night without adequate lighting, implying that she did not see the sidewalk/grass height differential. But in deposition, the following colloquy took place:

> Q. And would you be able to describe any type of
> lighting in the area where you fell?

---

[1] The record is not clear as to whether the Board owns the property or leased it from the City.

A. There was some lighting. Again, I wasn't paying attention to all that.

Q. Was there anything that prevented you from seeing the sidewalk before you fell?

A. Not that I recall. I was looking forward.

Plaintiff asserts that United did not inspect the property to ensure its safety. She points to the depositions of Fermin DeJesus and Melanio Inoa. DeJesus is the president of United. When asked whether any of United's agents inspected the Festival grounds beforehand, DeJesus acknowledged they did not. DeJesus also stated he was aware that attendees used the path that plaintiff traversed when she fell; he also indicated plaintiff was the only attendee injured at that year's Festival.

Inoa is United's treasurer. Like DeJesus, she stated that no inspections were made to determine if the Festival grounds were safe prior to it beginning. Inoa also explained that she was not aware of any prior tripping accident in the prior years when the Festival was held.

Plaintiff retained an expert and alleges the sidewalk was in a dangerous condition because there was a two to three-inch height difference between the sidewalk edge and the adjacent grass. She brought this action against United

under a premises liability theory and the Board under the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3.

Plaintiff's expert, Charles J. Witczak, III, P.E., issued an October 1, 2015 report following a September 12, 2014 inspection of the accident scene. Witczak noted "[t]he area was dark at the time [of the accident] and no supplemental lighting was provided specifically for the Festival activities." Witczak found:

> Photographs of the location of [plaintiff's] accident taken on [September 12, 2014] revealed that the concrete sidewalk surface was within industry standards, but there was a severe [2.75-inch] drop from same to the adjoining ground at the location of the accident. The area of the accident did not appear disturbed and was consistent with conditions present at the time of the accident, which was supported by the plaintiff's daughter.[2]

Witczak cited a City ordinance and a model code for walkway surfaces. The City ordinance pertained to sidewalks abutting City streets, which is not the case here. American Society for Testing and Materials (ASTM) document F 1637-09, entitled Standards for Safe Walking Surfaces, sets forth standards for pedestrian sidewalks "that may be reasonably foreseeable as pedestrian paths."

---

[2]  Witczak was apparently referring to plaintiff's stepdaughter who was not deposed.

A-3095-18T1

Standard 5.0 governs walkway surfaces. According to Witczak, the following provisions are pertinent:

> 5.1.1 Walkways shall be stable, planar, flush, and even to the extent possible. Where walkways cannot be made flush and even, they shall conform to the requirements of 5.2 and 5.3.
>
> . . . .
>
> 5.2.1 Adjoining walkway surfaces shall be made flush and fair, whenever possible and for new construction and existing facilities to the extent practicable.
>
> 5.2.2 Changes in levels of less than [0.25-inch] (6 mm) in height may be without edge treatment.
>
> 5.2.3 Changes in levels [0.5 and 0.25-inch] (6 and 12 mm) shall be beveled with a slope not greater than 1:2 (rise : run).
>
> 5.2.4 Changes in levels greater than [0.5-inch] (12 mm) shall be transitioned by means of a ramp or stairway that complies with applicable building codes, regulations, standards, or ordinances, or all of these.
>
> . . . .
>
> Section 5.7.1.2—"Exterior walkway conditions that may be considered substandard and in need of repair include conditions in which the pavement is broken, depressed, raised, undermined, slippery, uneven, or cracked to the extent that the pieces can be removed."

Witczak opined that the raised edge of the sidewalk

7

subjected the plaintiff to a tripping hazard not consistent with normal conditions expected for a typical sidewalk surface. Instead of the normal planar condition, the edge of the sidewalk was raised above the plane of the adjacent grass lawn area, which resulted in changes in level consistent with a tripping hazard. The hazard was further intensified by the fact that this tripping hazard was made more difficult to visually identify by the growth of vegetation immediately adjacent to same and the poor lighting conditions at the time of the accident.

The Board's expert, David M. Caruso, P.E., prepared an October 5, 2018 report, following a September 4, 2018 inspection of the accident site. Caruso found the sidewalk was seven feet wide and "[a] vertical elevation difference with a maximum height of [2.5] inches was measured between the grass surface and the walkway surface in this area." He also found the concrete walkway "was maintained in good condition and contained no holes, breaks, chips, or other surface defects." Caruso opined that the sidewalk plaintiff tripped over "was properly maintained[,] safe for its intended use and violated no known applicable code, standard or ordinance." He concluded that, "the height differential between the grassed area and the concrete walkway . . . did not create any unreasonable danger and violated no known applicable code, standard, or ordinance."

8

Caruso provided the following comments about Witczak's report. Because ASTM document F 1637-09 has not been adopted by the City, it is "neither enforceable nor applicable to the subject accident." Thus, "[a]ny alleged violations of this document were not applicable to the grassed area." In addition, Section F 1646's definition of a walkway does not include "[n]atural surfaces such as fields, playing fields, paths, walks, or footpaths, or a combination thereof." Accordingly, Caruso opined "that the natural surface grassed area at the junction with the concrete walkway was not included within the scope of" document F 1637-09. Therefore, the sections of the document cited by Witczak "were not applicable to the subject accident."

Caruso disagreed with Witczak's conclusion that "the grassed area at the junction with the concrete walkway created a hazardous condition for pedestrians who were attentive to their surroundings." Caruso noted that similar height differentials "are common at the junction between a hard surface walkway and an adjacent ground surface." In his opinion,

> the presence of the concrete walkway was open and obvious to persons making reasonable observations along their intended path of travel. Had [plaintiff] made reasonable observations returning to the festival from the portable restroom, as she had on her way from the festival to the portable restroom, her accident, in all probability, would not have occurred.

9

The City moved for summary judgment; the motion was withdrawn without prejudice because the discovery end-date was extended. United filed an opposed cross-motion for summary judgment, which was denied by the court.

The City filed a second motion for summary judgment. The Board and United cross-moved for summary judgment. On January 11, 2019, the court granted summary judgment to the City but denied summary judgment to the Board and United.

The Board moved for reconsideration; United joined in the motion.[3] On March 21, 2019, the court issued an order and oral decision granting reconsideration to the Board and United. The court concluded that genuine issues of material fact existed as "to all factors for establishing liability except for the issue of notice." The court noted that plaintiff must show that the dangerous condition existed before the accident "and was so obvious in nature that the public entity should have discovered the condition." However, the court found that "the mere existence of a dangerous condition [is not] enough to give the property owner notice of the dangerous condition." The court further noted

_____

[3] United's motion for reconsideration did not include supporting documents but was still considered by the court.

A-3095-18T1

that "a proprietor generally is not liable for injuries caused by defects of which he had no actual or implied knowledge, notice or reasonable opportunity to discover."

Regarding notice to the Board, the court stated:

> Here, the facts indicate that at no time prior to the accident did the Board receive any complaints about the gap between the sidewalk and surrounding ground.
>
> [The] Board never had to conduct repairs to fix similar issues with the sidewalk in the past, but also did not place the portable bathrooms at the location (indiscernible) the sidewalk, so the Board would not have any reason to know that this one specific part of the sidewalk would be more heavily used than other parts, such as to warrant additional safety precautions.
>
> Moreover, the fact that the Board knew (indiscernible) a property does not [create a presumption] that the Board had notice of the alleged dangerous condition of the land.

Likewise, as to United,

> it also never received any prior notice of the sidewalk being elevate[d] and it never imposed an additional safety precaution in the past.
>
> Even if the Board and United did have prior notice of the . . . two and three[-]quarter[-]inch gap, this would not necessarily put the defendants on notice that this gap would constitute a dangerous condition which would warrant repairs, as no prior incidents had

occurred in the past. It was not apparent that the sidewalk was in a dangerous condition.

The court concluded "the facts do not suggest that the Board and United had notice of the dangerous condition before the accident." It therefore determined the denial of summary judgment was "palpably incorrect" and "summary judgment was appropriate." The court vacated its prior order and granted summary judgment to the Board and United. This appeal followed.

On appeal, plaintiff raises the following points:

POINT I

THE MARCH 21, 2019 ORDER VACATING THE PRIOR TWO ORDERS DENYING DEFENDANT UNITED'S MOTIONS FOR SUMMARY JUDGMENT AND DISMISSING THE CLAIMS AGAINST DEFENDANT UNITED WITH PREJUDICE SHOULD BE REVERSED BECAUSE THE FACTS WEIGHED IN THE PLAINTIFF'S FAVOR WOULD ALLOW THE JURY TO FIND THAT IT NEGLIGENTLY BREACHED THE DUTY IT OWED HER.

POINT II

THE MARCH 21, 2019 ORDER VACATING THE PRIOR ORDER DENYING DEFENDANT BOARD'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING THE CLAIMS AGAINST DEFENDANT BOARD WITH PREJUDICE SHOULD BE REVERSED BECAUSE THE FACTS WEIGHED IN THE PLAINTIFF'S FAVOR WOULD ALLOW

12

THE JURY TO FIND THAT IT IS LIABLE UNDER
THE TORT CLAIMS ACT FOR THE DANGEROUS
CONDITION THAT EXISTED ON ITS PROPERTY.

## II.

Our review of a summary judgment ruling is de novo, applying the same legal standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017) (citing Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)). That is, summary judgment will be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). When determining whether there is a genuine issue of material fact, the court must consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill, 142 N.J. at 540.

We do not defer to the motion court's interpretation of "the meaning of a statute or the common law." Nicholas v. Mynster, 213 N.J. 463, 478 (2013) (citing Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012)).

A-3095-18T1

Plaintiff contends United was negligent.  Negligence is never presumed. Universal Underwriters Grp. v. Heibel, 386 N.J. Super. 307, 321 (App. Div. 2006).  In order to hold United was liable for negligence, plaintiff was required to establish four elements:  "(1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages."  Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (quoting Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 594 (2013)).  The burden is on plaintiff to establish these elements "by some competent proof."  Ibid. (quoting Overby v. Union Laundry Co., 28 N.J. Super. 100, 104 (App. Div. 1953), aff'd o.b., 14 N.J. 526 (1954)).

In order to recover, plaintiff must first establish that United owed a duty to her.  Strachan v. John F. Kennedy Mem'l Hosp., 109 N.J. 523, 529 (1988) (citations omitted).  The question whether a duty exits is one of law and not of fact.  Wang v. Allstate Ins. Co., 125 N.J. 2, 15 (1991) (citing Strachen, 109 N.J. at 529).

It is undisputed that plaintiff was a business invitee since she was charged a vendor fee by United.  United owed plaintiff "a duty of reasonable care to guard against any dangerous conditions on [its] property that the owner either

knows about or should have discovered. That standard of care encompasses the duty to conduct a reasonable inspection to discover latent dangerous conditions." Rowe v. Mazel Thirty, LLC, 209 N.J. 35, 44 (2012) (quoting Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 434 (1993)).

"[A]n invitee seeking to hold a business proprietor liable in negligence 'must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident.'" Prioleau v. Ky. Fried Chicken, Inc., 223 N.J. 245, 257 (2015) (quoting Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563 (2003)). A "dangerous condition of property may be found to exist when an unreasonable risk of harm is created by the combination of a defect in the property itself and the acts of third parties." Longo v. Aprile, 374 N.J. Super. 469, 474 (App. Div. 2005) (quoting Roe by M.J. v. N.J. Transit Rail Operations, Inc., 317 N.J. Super. 72, 79 (App. Div. 1998)).

The "mere existence of a dangerous condition does not, in and of itself, establish actual or constructive notice." Prioleau v. Ky. Fried Chicken, Inc., 434 N.J. Super. 558, 571 (App. Div. 2014) (quoting Arroyo v. Durling Realty, LLC, 433 N.J. Super. 238, 243 (App. Div. 2013)), aff'd as modified, 223 N.J. 245 (2015). Instead, "[a] defendant has constructive notice when the condition

existed 'for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent.'" Troupe v. Burlington Coat Factory Warehouse Corp., 443 N.J. Super. 596, 602 (App. Div. 2016) (quoting Parmenter v. Jarvis Drug Stores, Inc., 48 N.J. Super. 507, 510 (App. Div. 1957)). The Troupe court noted that constructive notice can be proven by way of circumstantial evidence. Ibid. The absence of actual or constructive notice of the dangerous condition is generally fatal to a plaintiff's claim of premises liability. Arroyo, 433 N.J. Super. at 243.

Plaintiff relies on Smith v. First National Stores, Inc., 94 N.J. Super. 462 (App. Div. 1967) in support of her contention that the alleged dangerous condition was attributable to the construction of the sidewalk at an elevated level. In Smith, the plaintiff used the defendant store's restroom; upon leaving, he slipped and fell down a flight of stairs due to sawdust tracked by the store's employees. Id. at 464-65. The court found "[i]t was circumstantially inferable that the presence of the sawdust on the stairway was substantially attributable to such use and, therefore, that any danger which may have inhered in the tracking of greasy sawdust . . . was created by defendant's employees." Id. at 465. Under those conditions, the court concluded "[n]otice, either actual or constructive, is

16

not required where a defendant through its agents and employees creates a dangerous condition." Id. at 466.

Here, plaintiff argues United created the dangerous condition by not putting up fencing around the Wilentz Elementary parking lot that would direct the public to only use the sidewalk. The trial court rejected this theory of liability. We concur.

United was issued a permit by the City to use Wilentz Field and the Board's property for the three-day Festival. It did not construct or modify the concrete walkway. The permit did not authorize United to modify the walkway or the surrounding grass field.

The concrete walkway where plaintiff fell is located on the Wilentz Elementary School yard. While the record does not disclose when the walkway was constructed, it clearly existed before the Festival and was presumably used by students and persons attending school events. The record discloses no prior accidents injuring students or other individuals using or crossing the walkway. Indeed, plaintiff and her stepdaughter had crossed the walkway on the way to the portable toilets without incident moments before the accident. Of the thousands who attended the Festival, there is no evidence that any other attendee tripped on the walkway. Under these circumstances, United was not under a

17

duty to erect temporary fencing to prevent Festival attendees from crossing the sidewalk where plaintiff fell.

We discern no basis to hold United liable for plaintiff's injuries under these circumstances. Accordingly, summary judgment was properly granted to United.

IV.

Plaintiff's claim against the Board is governed by the TCA. Under the TCA, "immunity from tort liability is the general rule [for a public entity] and liability is the exception." Polzo v. Cty. of Essex (Polzo I), 196 N.J. 569, 578 (2008) (quoting Coyne v. State Dep't of Transp., 182 N.J. 481, 488 (2005)); see also N.J.S.A. 59:1-2 (declaring "the public policy of this State [is] that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein").

Plaintiff alleges the Board is liable for her injuries under N.J.S.A. 59:4-2(b). To sustain her claim, plaintiff must show:

> (1) that the property was in a dangerous condition at the time of the accident, (2) that there was proximate cause between the injury and dangerous condition, (3) that the dangerous condition created a reasonably foreseeable risk of the kind of injury that was incurred and (4) that the public entity had notice in sufficient time to protect against the condition or that the condition had been

18

created by an act or omission of a public employee acting within the scope of his employment.

However, even if a plaintiff were to establish these four factors, [s]he could not prevail if the action the public entity took or failed to take to protect against the condition was not palpably unreasonable.

[Brown v. Brown, 86 N.J. 565, 575 (1981) (interpreting liability under N.J.S.A. 59:4-2(b)).]

In order to be liable, "a public entity had actual or constructive notice of the dangerous condition under [N.J.S.A.] 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." N.J.S.A. 59:4-2(b). Actual notice and constructive notice are defined by N.J.S.A. 59:4-3, which provides:

a. A public entity shall be deemed to have actual notice of a dangerous condition . . . if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character.

b. A public entity shall be deemed to have constructive notice of a dangerous condition . . . only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character.

"Whether a public entity is on actual or constructive notice of a dangerous condition is measured by the standards set forth in N.J.S.A. 59:4-3(a) and (b),

not by whether 'a routine inspection program' by the [public entity] . . . would have discovered the condition." <u>Polzo v. Cty. of Essex (Polzo II)</u>, 209 N.J. 51, 68 (2012).

The motion court found "the facts do not suggest that the Board" had actual or constructive notice of the alleged dangerous condition before the accident. On that basis, the court granted summary judgment to the Board. We concur that there is no evidence in the motion record that the Board had actual notice of the alleged dangerous condition.

Plaintiff argues that there were material facts in issue regarding whether the raised surface of the walkway was a dangerous condition and whether the Board had constructive notice of the alleged dangerous condition. We agree.

We have previously held in a non-TCA case, involving a trip and fall while attending a garage sale on private property, that "the condition of the overgrown lawn and obstructed drop-off at the point of [the plaintiff's] fall was defective and created an unreasonable risk of harm was an issue of material fact for the jury." <u>Filipowicz v. Diletto</u>, 350 N.J. Super. 552, 561 (App. Div. 2002). In <u>Atalese v. Long Beach Township.</u>, we held that a 0.75-inch difference in pavement elevation in a designated pedestrian-bicycle lane created by municipal employees "could be accepted by a jury as creating a substantial risk of injury

and hence a dangerous condition under the [TCA]." 365 N.J. Super. 1, 6 (App. Div. 2003).

We conclude there are material facts at issue with respect to whether the raised sidewalk was a dangerous condition. Plaintiff and other Festival participants used the impromptu path to reach the portable toilets. Further, plaintiff's fall occurred at night in an area that was not directly illuminated by the Festival's light towers, although there may have been some ambient light. Accordingly, a reasonable jury could also conclude it was reasonably foreseeable that pedestrians would walk across the lawn and cross walkway at night, given the location of the Festival and portable toilets, the Festival's hours, and the number of attendees.[4]

We also conclude there are material facts at issue regarding whether the Board had constructive notice of the alleged dangerous condition. There is no indication in the record or allegation that the concrete walkway was new. Nor is there any evidence or allegation that an activity performed shortly before the

---

[4] Notably, the Board does not claim design immunity under N.J.S.A. 59:4-6, which provides that a public entity is not liable "for an injury caused by the plan or design of public property, . . . where such plan or design has been approved in advance of the construction or improvement by . . . the governing body of the public entity."

accident caused the elevation discrepancy. Thus, a reasonable jury could find that the height discrepancy between the walkway surface and the adjacent lawn would have been apparent through inspection during daylight hours.

In addition, the evidence that plaintiff was looking ahead rather than down when she crossed the sidewalk goes to comparative fault, another jury issue. See Filipowicz, 350 N.J. Super. at 561 (noting determination of the comparative fault of the parties is a jury function (citing Berger v. Shapiro, 30 N.J. 89, 102 (1959)).

These conclusions do not end our analysis, however.[5] Plaintiff must also establish a prima facie case that the action or inaction of the public entity was "palpably unreasonable." Coyne, 182 N.J. at 493; Maslo v. City of Jersey City, 346 N.J. Super. 346, 349 (App. Div. 2002).

The term palpably unreasonable "implies behavior that is patently unacceptable under any given circumstance." Ogborne v. Mercer Cemetery Corp., 197 N.J. 448, 459 (2009) (quoting Kolitch v. Lindedahl, 100 N.J. 485,

---

[5] "[W]e review orders, not opinions." Tatham v. Tatham, 429 N.J. Super. 502, 517 n.13 (App. Div. 2013) (citing Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001)). An appellate court is "free to affirm the trial court's decision on grounds different from those relied upon by the trial court." State v. Heisler, 422 N.J. Super. 399, 416 (App. Div. 2011).

493 (1985)). "[F]or a public entity to have acted or failed to act in a manner that is palpably unreasonable, it must be manifest and obvious that no prudent person would approve of [the] course of action or inaction." Ibid. (quoting Kolitch, 100 N.J. at 493)..

"Although ordinarily the question of whether a public entity acted in a palpably unreasonable manner is a matter for the jury, in appropriate circumstances, the issue is ripe for a court to decide on summary judgment." Polzo II, 209 N.J. at 75 n.12 (citations omitted). A court may assess whether a claim of palpable unreasonableness "can reasonably be made under the evidence presented." Maslo, 346 N.J. Super. at 351 (quoting Black v. Borough of Atl. Highlands, 263 N.J. Super. 445, 452 (App. Div. 1993)). Accordingly, "the question of palpable unreasonableness may be decided by the court as a matter of law in appropriate cases." Id. at 350 (citing Garrison v. Twp. of Middletown, 154 N.J. 282, 311 (1998) (Stein, J., concurring)).

We contrast the facts in this matter to cases in which a trip and fall are caused by a pothole, spalling due to weathering, cracked concrete, a raised section of concrete caused by a tree root, or modifications by public employees to existing pavement. The record contains no evidence that plaintiff's trip and fall were caused by failure to maintain the concrete walkway. Nor is there any

23

evidence that the Board received prior complaints or reports of injuries about the raised level of the walkway. Moreover, the standards set forth in ASTM document F 1637-09, which formed the basis for the opinions expressed by plaintiff's expert, do not apply here because they were not adopted by the City.

We conclude that even if plaintiff could show that the Board was on constructive notice that the raised walkway surface was a dangerous condition, a reasonable jury could not find that, under the circumstances here, the failure to take action to protect against the condition was palpably unreasonable. Therefore, plaintiff is unable to meet her burden of proof. See Garrison, 154 N.J. at 311 (Stein, J., concurring) (concluding that a township's failure to repair a 1.5-inch declivity in a parking lot absent prior complaints or reports, would be insufficient to permit "reasonable jurors to conclude that the '[t]ownship's inaction . . . was patently unacceptable in a way so manifest and obvious that no prudent person would approve of its inaction."). Thus, summary judgment was properly granted. Had the Board received prior complaints or reports of injuries regarding the alleged dangerous condition, we might view the issue differently. See ibid.; see also Polzo II, 209 N.J. at 76-77 (quoting Justice Stein's concurrence in Garrison with approval).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3095-18T1